### H. B. WIGGINS SONS' CO. v. COTT-A-LAP CO.

(Circuit Court, D. Connecticut. April 16, 1909.)

1. MASTER AND SERVANT (§ 60*)—CONFIDENTIAL EMPLOYMENT—TRADE SECRETS.
   Where a confidential employé learns his employer's trade secret in the course of the employment, such employé cannot make use of the secret to his employer's disadvantage, whether an agreement that he will not do so is expressed in the employment contract or only implied.
   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 60.*]

2. INJUNCTION (§ 56*)—TRADE SECRETS—DISCLOSURE.
   Mere hiring of complainant's former confidential servant, who had acquired knowledge of the complainant's trade secret, by complainant's

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

business rival, in the absence of anything more than mere opportunity on defendant's part to learn and use complainant's secret, was insufficient to justify the issuance of an injunction, either against defendant or the employé, restraining the employé from imparting, and defendant from receiving or using, information concerning such secret in defendant's business, to complainant's prejudice.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 110; Dec. Dig. § 56.*]

In Equity. On motion for preliminary injunction.

Edwin J. Prindle, for complainant.

Henry C. White and Leonard M. Daggett, for defendant.

PLATT, District Judge. The bill herein was filed March 11, 1909, and upon affidavits accompanying the same a restraining order was granted. The motion now to be decided was heard April 13th upon more elaborate affidavits. The motion asks for an order enjoining the defendant during the pendency of the suit from "receiving or seeking to receive, or acquiring or seeking to acquire, from Robert W. Cornelison, any formula, process, or mechanical device or other manufacturing expedient" of the complainant, and from using the same in the manufacture of wall coverings.

The evidence shows that Cornelison is a consulting chemist, and as such was employed by the complainant in its business at Bloomfield, N. J., for a number of years. Under such employment his relations with the complainant were confidential and many secrets of the business came into his possession. The only secret specifically exploited is the formula for the backing upon the wall coverings and the process of applying such backing. The complainant claims that it owns a secret formula and process by which uniform backings of two colors only, one for the lighter and one for the darker faces, can be used on all wall coverings of the kinds made by it. He says that his backings will not penetrate to the face of the coverings, and because of that fact he can restrict the number of colors used on the backs as he does. This formula and process tends, he says, to promote economy and efficiency of manufacture.

In the case at bar there is a contract about the employment in which Cornelison agrees not to disclose trade secrets, but the law about such secrets is too plain to require extended comment. If one person has a trade secret which is valuable to him, and another person enters into confidential employment with him in and about the business which demands the use of that secret, and by such employment learns the secret, he cannot utilize his secret knowledge to the disadvantage of his employer. If he does so, he robs his employer. That is the contract relationship between them, and it makes no difference whether it is expressed in writing or not. If not expressed, it will be implied. In the case under discussion there is no doubt about the confidential employment and possession of trade secrets by Cornelison. He has now left the employment, and carries the secrets with him. He has accepted employment with a rival manufacturer of wall coverings. The exact question before me is whether such a hiring of him by the

rival warrants a court of equity in resorting to so drastic a measure as the use of the injunctive power to prevent that rival from acquiring that secret knowledge. I cannot think that it does, unless the circumstances surrounding the hiring are such as to persuade one that the ulterior purpose in such hiring is evil. It appears that long ago two different managers of the defendant's business, which was then owned largely by other people, made efforts to learn the complainant's secrets by hiring from it men who knew some of the secrets. The defendant as then organized disavowed responsibility for the acts of its managers, and harmony seems to have reigned, as thoroughly as harmony can be expected to exist between avowed rivals, for a long time thereafter. The defendant as now organized and Dr. Cornelison state explicitly that there is no intention to derive any benefit from the doctor's secret knowledge gained while in complainant's employ.

If the injunction issues, it means that hereafter no man can work for one and learn his business secrets, and after leaving that employment engage himself to a rival in business, without carrying on his back into that business the injunctive mandate of a court of equity. There is nothing whatever in the facts of this case, except opportunity to do wrong and a suspicion in the mind of the rival that wrong will be done. The remedy asked for is an extraordinary one, and should not be lightly indulged in. The chancellor ought never to come into such a frame of mind that he assumes human nature to be essentially and inherently evil. Furthermore, the danger of irreparable injury is not manifest. Whether the secrets are given away or not can never be positively known, except by inspection of defendant's goods hereafter to be made. Whenever the outcome shall warrant it, the road to injunctive relief is plainly marked and easily followed.

Upon such facts as have been brought to my attention it is my duty to deny the motion for an injunction.

This memorandum has been written in the Cott-A-Lap case. It applies with equal, if not greater force, to the motion against Cornelison. That motion is also denied.