(64 Misc. Rep. 374.)

WITKOP & HOLMES CO. v. BOYCE.

(Supreme Court, Equity Term, Erie County. March, 1909.)

INJUNCTION (§ 55*)—SUBJECTS OF RELIEF—BREACH OF SERVANT'S DUTY—DIS·
CLOSURES TO MASTER'S RIVAL.

One employed by a tea and coffee house to solicit trade in a particular part of the city, and being furnished with a list of its customers therein, and their addresses, breaches his duty, irrespective of contract not to use confidential knowledge gained in the course of his employment to his employer's prejudice, and so will be enjoined, where, on leaving such employment and engaging with a rival house, he goes to such customers and induces them to give their trade to the new employer, taking up the trading stamp books of the old employer, and issuing to the customers like books, of the same value, of the new employer.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 108; Dec. Dig. § 55.*]

Action by the Witkop & Holmes Company against Eldridge Boyce, by Nelson W. Boyce, guardian ad litem, to restrain defendant from wrongfully using information confided to him by plaintiff. Judgment for plaintiff.

See, also, 61 Misc. Rep. 126, 112 N. Y. Supp. 874.

Sullivan, Bageley & Wechter (George Clinton, of counsel), for plaintiff.

James A. Magoffin (Adelbert Moot, of counsel), for defendant.

BROWN, J. The plaintiff, a domestic corporation engaged in the business of retailing teas, coffees, baking powder, spices, and dry

groceries, maintains stores in several cities in Western New York. In Buffalo it has a store at 145 Swan street, where business is maintained by employing about 20 young men furnished with horses and wagons assigned to different sections of the city, through which they drive soliciting orders for such groceries as plaintiff handles, later delivering the same, collecting the moneys therefor, and all sales being made for cash. The plaintiff's drivers use cards containing names and addresses of customers to be served which are furnished by the plaintiff, and to which are added such new names as are obtained from time to time by the drivers and by canvassers especially employed for that purpose. Each driver, as he solicits and receives an order, enters the same upon the card bearing the name and address of the customer. Upon his return to plaintiff's store, the card is delivered to the plaintiff, who causes the order to be filled by putting in appropriate packages the goods ordered. The order is copied upon another card retained by the plaintiff, and the goods thus put up are taken by the driver and delivered to the customer, and a new order solicited. For the purpose of making such deliveries and soliciting new orders, the driver's card is retained by him.

The Great Atlantic & Pacific Tea Company is a foreign corporation engaged in the same business as that of the plaintiff and conducted generally upon the same plan of soliciting orders by employés using horses and wagons, maintaining two stores in Buffalo, and doing a very large business throughout the United States; both the plaintiff and the Great Atlantic & Pacific Tea Company furnishing their drivers with trading stamps and stamp books, a stamp book being given to each customer and with each purchase stamps of relative face value with the purchase are also given to the customer, who places the stamps in the book, and when the book is filled it is redeemed by the plaintiff or the Great Atlantic & Pacific Tea Company in merchandise, and both plaintiff and Great Atlantic & Pacific Tea Company asserting that the trading stamp feature of their business is of great value in inducing further purchasing and retaining the customer. A consumer having once commenced trading with the plaintiff through its driver, obtaining a stamp book, partially filling the same with stamps, the reasonable inference is that such trading will continue, at least until the stamp book is filled with stamps secured at the time of the purchase of goods, to the end that the customer will reap the reward offered for further trade by being able to obtain merchandise of considerable value upon the redemption of the filled stamp book.

For some years prior to July 22, 1907, John Raupp had been in the employ of the plaintiff as a driver of one of plaintiff's wagons soliciting orders and delivering goods to customers, having assigned to him the territory in the city of Buffalo bounded by Best, Ferry, Fillmore, and Main streets, and having been furnished by the plaintiff with a list of persons consisting of names and addresses of plaintiff's customers who had plaintiff's trading stamp books residing within the limits of such territory, upon whom he called, secured orders, and delivered goods and stamps for plaintiff. While so soliciting orders, Raupp canvassed for new customers, secured some, and was furnished by plaintiff with new names and addresses secured by other canvassers in the

same territory, and up to July 22, 1907, was then serving for plaintiff within such territory about 400 customers. On July 22, 1907, the defendant entered the employ of the plaintiff, and was assigned to the same territory, route, and wagon that was being operated by Raupp. For about two weeks Raupp accompanied the defendant over the route, introducing him to the customers whose names and addresses had been furnished by the plaintiff, instructing the defendant how to canvass for new customers, how to sell teas and coffees, explained the operation of the trading stamp feature of the business, and advised the defendant of those customers who were irresponsible. After two weeks' instruction, the defendant was deemed capable of handling the business, and the territory, route, horse and wagon, and names and addresses of the customers served by Raupp were delivered by Raupp to the defendant. These names and addresses were contained on cards furnished by the plaintiff and were about 400 in number. The defendant continued this business of calling upon such customers, securing their orders, delivering plaintiff's goods and trading stamps, canvassing for new customers, securing new customers, increasing plaintiff's sales, all in such territory up to October 3, 1908, on which date he left the employment of the plaintiff and began work for the said Great Atlantic & Pacific Tea Company, a competitor of the plaintiff. At the time of leaving plaintiff's employment, defendant delivered up to the plaintiff all of his cards containing names and addresses of 451 customers theretofore served by him in such territory for plaintiff, retaining no list or memorandum of such customers. Being very familiar with such territory, streets, residences, and such customers, he knew their names and residences and was personally acquainted with them all, having acquired such knowledge and acquaintanceship solely during the time he was in plaintiff's employ and while using the list or names of customers for plaintiff's benefit.

Immediately upon entering the employment of the Great Atlantic & Pacific Tea Company, defendant began calling upon the same persons, consumers of teas, coffees, and articles sold by the plaintiff, with which he had become acquainted while in plaintiff's employ and whose names and addresses had originally been furnished him by plaintiff, and which he had procured while working in such territory, and solicited from such persons orders, obtained orders, and delivered to such customers the articles sold for the Great Atlantic & Pacific Tea Company; the defendant stating to substantially all such customers that he had left the plaintiff's employment and was at work with the Great Atlantic & Pacific Tea Company, and, if such customers desired to have such tea, coffee, etc., of the Great Atlantic & Pacific Tea Company, he (the defendant) would like to sell them, and defendant, in all cases where he procured orders for groceries, etc., for the Great Atlantic & Pacific Tea Company, exchanged trading stamp books, taking up the books theretofore furnished by the plaintiff to its customers, and delivering to such customers stamp books of the Great Atlantic & Pacific Tea Company, allowing the proper stamp value, to the end that no loss would be entailed by the consumer in such exchange. For several days the defendant devoted all his time in soliciting for the Great Atlantic & Pacific Tea Company

from the customers formerly served by the defendant for the plaintiff. On October 26, 1908, defendant called at upwards of 20 residences for and on behalf of the Great Atlantic & Pacific Tea Company, where in each instance there resided a customer who had been a former customer of the plaintiff. On October 28, 1908, one Crosby Good, another employé of the Great Atlantic & Pacific Tea Company, drove the horse and wagon used by the defendant on the 26th day of October, 1908, and delivered goods for that company only at places where the defendant had theretofore delivered goods for the plaintiff.

From the foregoing brief recital of the essential facts established by the mass of testimony upon this trial, it clearly appears that the defendant has used for the benefit of others than the plaintiff information imparted to him by the plaintiff for the sole use and purpose of being used by the defendant for plaintiff's benefit. There can be no escape from the conclusion that the names and addresses of this large list of customers of plaintiff residing in a well-defined accessible territory were placed in defendant's possession for the sole and only purpose of being used for plaintiff's benefit. They were part of plaintiff's assets in business. These names and addresses were plaintiff's property. The plaintiff originated, made up, and secured these lists of names, and the trade naturally to follow the continuation of the business relations established by the intercourse of months and years between plaintiff and these customers was the property of the plaintiff. The trading stamp books of the plaintiff that had been delivered to the plaintiff's customers having been partially filled with trading stamps furnished by reason of previous sales, and when completely filled redeemable at plaintiff's store in valuable merchandise, were of value to the plaintiff as an assurance of further trade and custom, and the names and residences of the persons holding such books were the property of plaintiff, and could not rightfully be used by the defendant for his own benefit or the benefit of another. The defendant had no right, even though he is an infant, to use such information thus imparted to him in a confidential manner for the benefit of plaintiff's competitor and to the plaintiff's damage. The obligation of an employé not to divulge or use confidential knowledge gained in the course of his employment to the prejudice of his employer is the foundation of every contract of hiring. It is unfair for the defendant to take advantage of knowledge imparted to him in confidence and use that knowledge to destroy plaintiff's business. The defendant furnished an employé of plaintiff's competitor with information of plaintiff's customers for the purpose and which was used by such employé in making deliveries for such competitor, and he claims the right to personally go over the route, call upon each customer of the plaintiff whose name and address had been furnished him for the purpose of plaintiff's business, solicit orders for plaintiff's competitor, take up plaintiff's trading stamp books from such customers, and issue a trading book of like stamp value to the customer furnished by plaintiff's competitor. If such conduct must be approved and adjudged to be right, proper, and lawful, there would seem to be no limitation upon the gross betrayal of confidence by an

unscrupulous employé. The defendant's use of confidential communications, communicated to him by plaintiff for its benefit, for the purpose and with the intent to secure plaintiff's customers as the customers of plaintiff's rival and competitor, is so grossly unfair and unjust, and the injury and damage inflicted upon plaintiff's property rights are so incapable of being ascertained, the conclusion is necessarily reached that plaintiff is entitled to the judgment and decree of this court permanently restraining the defendant from calling upon those customers named on the lists or cards furnished by the plaintiff and used by the defendant in October, 1908, for trade purposes.

This conclusion is reached irrespective of the written contract of employment executed by the defendant, who is an infant, as plaintiff's right to equitable relief does not depend upon that instrument, but solely depends upon the fact that the defendant has violated, and claims the right to continue to violate, existing property rights of the plaintiff. Neither is it important whether the defendant has committed a misdemeanor in violation of section 642 of the Penal Code, prohibiting the unlawful use of a trade list of 500 names of customers. Plaintiff's rights in its trade lists of 250 names of customers are entitled to equal protection at the hands of a court of equity with the rights in a list of 500 names.

Judgment is, accordingly, ordered in favor of the plaintiff and against the defendant, with costs.