[L. A. No. 2942.    Department Two.—March 7, 1913.]

## EMPIRE STEAM LAUNDRY (a Corporation), Respondent, v. RUDOLPHUS LOZIER, Appellant.

INJUNCTION—EMPLOYER AND EMPLOYEE—DISCLOSURE OF TRADE SECRETS. Equity will always protect an employer against the unwarranted disclosure and unconscionable use by an employee of trade secrets and confidential business communications. The equitable jurisdiction in this connection is not dependent upon express provisions in the contract of employment prohibiting such disclosure or use.

ID.—LAUNDRYMAN—DUTIES OF DRIVER OF LAUNDRY WAGON—LIST OF
CUSTOMERS—CONFIDENTIAL AGENCY.—An employee of a laundryman,
whose duties were to drive a laundry wagon along a designated
route in a city, to serve well the customers of his employer, to in-
crease his business, to solicit new business, and keep a complete and
confidential list of all the customers on the route, is engaged in an
agency of trust and confidence, and such list, even though in part
prepared by him, is the absolute, and a valuable part of the property
of the employer.

ID.—KNOWLEDGE OF BUSINESS ACQUIRED BY DRIVER—TRADE SECRETS—
INJUNCTION—SOLICITING BUSINESS FROM CUSTOMERS OF FORMER
EMPLOYER.—Knowledge acquired by such employee during his em-
ployment of the names and addresses of the customers along the
route is in the nature of a trade secret or confidential communica-
tion, and equity will enjoin him, after the termination of his em-
ployment, from soliciting or receiving, on behalf of another laundry-
man, laundry work from any of such customers.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   Leon F. Moss, Judge.

The facts are stated in the opinion of the court.

J. R. Wilder, for Appellant.

Lucian J. Clarke, and Hunsaker & Britt, for Respondent.

HENSHAW, J.—This is an appeal from the judgment of
the superior court of Los Angeles County awarding plaintiff
a perpetual injunction.   The appeal is on the judgment-roll.
The facts pleaded and found are that plaintiff is a corpora-
tion engaged in the laundry business in the city of Los An-
geles, having a large number of regular customers and a valu-
able and growing business.   This business to a large extent is
conducted through its agents and the drivers of its wagons,
who canvass from house to house soliciting orders for laundry
work, collect and return the clothes.   Each of these agents
and drivers has a particular route.   On this he is required to
call for the clothes upon regular recurring days of each
week.   Thus the whole week is consumed by each driver in
covering his route.   The names and addresses of plaintiff's
customers, together with the day of the week their clothes
are to be called for, are kept in special prepared lists by plain-
tiff and are used for plaintiff's business purposes by its drivers

and agents. These lists have been compiled and are maintained at the expenditure of a large sum of money and they enable the plaintiff to keep a check upon its business and to increase and extend it where possible. They constitute a trade secret of great value to plaintiff. Upon September 1, 1909, defendant, who had previously been employed by plaintiff, became one of its agents and drivers and was put in charge of a route known as route No. 6, covering a designated portion of the city of Los Angeles. Plaintiff at its own expense furnished defendant a team and a wagon which were used by the latter on plaintiff's business in connection with his route. The route superintendent of plaintiff accompanied defendant upon his earlier trips and introduced him to plaintiff's customers. Thereafter, from time to time, other agents of plaintiff canvassed this section of the city and secured additional customers for plaintiff. The clothes of these additional customers were thereafter called for and delivered by defendant, the names of these additional customers being added to the list kept by plaintiff. On September 22, 1909, defendant voluntarily entered into a contract with plaintiff concerning the duties and liabilities of the employment. By its terms the plaintiff agreed to furnish a horse and wagon at its own expense. Defendant agreed to use the horse and wagon for the purpose of collecting and delivering the clothes in the manner indicated. The compensation of defendant was fixed upon a commission basis. Defendant agreed that at any time during his employment he would, on demand, furnish plaintiff and its successors a complete list of the correct names and places of residence of all its customers along any of its routes to which he might have been assigned; that he would immediately notify plaintiff of the name and address of any new customer, and report all changes of residence of old customers, so that upon the termination of his employment the laundry company should have a complete list of the correct names and places of residence of all its customers with whom it had dealt. Paragraph VII of the contract is in the following language.

"The said party of the second part further agrees that he will not solicit laundry work from any of the customers of the Empire Steam Laundry or its successors in said laundry business, either for himself or as employee of any other per-

son or corporation, nor in any manner attempt to induce any of the customers of the Empire Steam Laundry to withdraw their custom from it or its successors, either during his employment, after his employment shall cease, or in contemplation of the cessation of his employment, and that if he threatens or attempts to solicit such laundry work from any of the customers of the said Empire Steam Laundry, or its successors in the laundry business, then in any suit that may be brought by the Empire Steam Laundry, or its successors, for the violation of this contract in that respect, the party of the second part agrees that an order may be made in such suit, enjoining him from violating any of the said provisions of this agreement, and an order to that effect may be made pending the litigation as well as upon the final determination thereof, and that such application for such writ of injunction shall be without prejudice to any other right of action which may accrue to the Empire Steam Laundry or its successors by reason of the breach of its contract on the part of the party of the second part.''

A termination of this contract was made optional with each party to it upon thirty days' notice to the other. Defendant continued in this employment until February 12, 1910, when, in violation of the contract, and without cause or notice to plaintiff, he quit its employ and entered the employ of a rival competitor of the plaintiff, and thereafter commenced to canvass and continued to canvass and solicit laundry work from the customers of plaintiff along route No. 6. Defendant, when he quit the employment of the plaintiff intended to divulge and make use of all the information he had acquired while employed by plaintiff as its driver and agent and to disclose this to his new employer, and he did so use his knowledge and information, including the lists of customers which he had in his possession and which he refused to deliver to plaintiff. As a result defendant has been able to carry the patronage of many of plaintiff's former customers to the new employer, to the great business loss and injury of plaintiff. Upon these facts and the logical conclusions of law drawn therefrom, judgment was entered perpetually enjoining the defendant ''from in any manner soliciting or receiving laundry work from any of the persons who were on February 12, 1910, customers of the plaintiff along the route assigned by plaintiff to defendant

while the defendant was in the employment of plaintiff, and known and designated as route No. 6, which is embraced within that portion of the city of Los Angeles, county and state aforesaid.'' Here follows a description of the district covered by route No. 6.

The sole proposition advanced upon this appeal is that the contract between the parties is void under sections 1673, 1674, and 1675 of our Civil Code, as being a contract in restraint of trade, not countenanced by our law. Wherefore the injunction to enforce the terms of the contract is itself without warrant in law. It is true that the court finds that the contract between these parties was freely and voluntarily entered into and that it was not in restraint of trade, but into this question it is wholly unnecessary to enter. For the judgment of the court does not rest alone upon its findings as to the validity of the contract, but declares a violation of plaintiff's rights under circumstances cognizable in equity, without any express contract whatsoever upon the subject. Equity always protects against the unwarranted disclosure and unconscionable use of trade secrets and confidential business communications. So little does this equitable jurisdiction depend upon an express contract that it has been said by high authority that equity will extend this protection in every contract of service ''in the absence of a stipulation to the contrary.'' (*Robb* v. *Green*, L. R. [1895], 2 Q. B. Div. 1, 10.) Therefore the question of the contract between the parties becomes immaterial, except that its consideration plainly evinces the intent of the parties, the one to protect itself against the doing, the other to abstain from doing the very things which the court finds that defendant upon the termination of his employment immediately proceeded to do.

There can be no question, under the findings here presented, but that defendant's agency was one of trust and confidence. His duties were to serve well the customers of plaintiff, to increase the business of the plaintiff, to solicit new business and keep a complete and confidential list of all the customers. This list, even though in part prepared by him, was the absolute property of plaintiff and was a valuable part of its property. (Civ. Code, sec. 1985; *Gower* v. *Andrew,* 59 Cal. 119, [34 Am. Rep. 242]; *Burns* v. *Clark,* 133 Cal. 634, [85 Am. St. Rep. 233, 66 Pac. 12].) Thus in *Lamb* v. *Evans,* L. R. (1893),

Ch. Div. 218, canvassers for a directory, after leaving the service of their former employer, used the data they had collected to assist a rival publication in procuring advertisements from the same parties. An injunction was granted, and the court said:

"What right has any agent to use materials obtained by him in the course of his employment and for his employer against the interest of that employer? I am not aware that he has any such right. Such a use is contrary to the relation which exists between principal and agent. It is contrary to the good faith of the·employment, and good faith underlies the whole of an agent's obligations to his principal. No case, unless it be the one which I will notice presently, can I believe be found which is contrary to the general principle upon which this injunction is framed, viz., that an agent has no right to employ as against his principal materials which that agent has obtained only for his principal and in the course of his agency. They are the property of the principal. The principal has, in my judgment, such an interest in them as entitles him to restrain the agent from the use of them except for the purpose for which they were got."

That equity will always protect against the unwarranted disclosure of trade secrets and confidential communications and the like is, of course, settled beyond peradventure. (Joyce on Injunction, sec. 451; Story's Equity Jurisprudence, 10th ed., vol. 1, sec. 325; High on Injunction, 3d ed., vol. 1, sec. 19; *Vulcan Detinning Co.* v. *American Can Co.*, 72 N. J. Eq. 387, [12 L. R. A. (N. S.) 102, 67 Atl. 339]; *Stevens & Co.* v. *Stiles,* 29 R. I. 399, [17 Ann. Cas. 140, 20 L. R. A. (N. S.) 933, 71 Atl. 802]; *Witkop & Holmes Co.* v. *Boyce,* 61 Misc. Rep. 126, [112 N. Y. Supp. 874]; affirmed 131 App. Div. 922, [115 N. Y. Supp. 1150]; *Witkop & Holmes Co.* v. *Boyce,* 64 Misc. Rep. 374, [118 N. Y. Supp. 461]; *Witkop & Holmes Co.* v. *Great Atlantic & Pacific Tea Co.,* 69 Misc. Rep. 90, [124 N. Y. Supp 596]; *Union Switch and Signal Co.* v. *Sperry,* 169 Fed. 926; *Peabody* v. *Norfolk,* 98 Mass. 452, [96 Am. Dec. 664]; *Loven* v. *People,* 158 Ill. 159, [42 N. E. 82].)

It would seem, therefore, that the only question left in the case is whether the knowledge so acquired by defendant and which he was so using comes fairly within the meaning of trade secrets and communications. Upon this question neither

reasoning nor authority can leave one in doubt.   The English case, from which quotation has already been made, is well nigh parallel to the one before us.   In *Hackett* v. *A. L. & J. J. Reynolds Co.*, 30 Misc. Rep. 733, [62 N. Y. Supp. 1076], it was held that the knowledge acquired by the canvassing agent of a grocery company of the names and addresses of its customers is knowledge against the misuse of which equity will protect as being in the nature of a trade secret, the court there saying: "This knowledge was in the nature of a trade secret and was imparted to the plaintiff at the time he was employed by defendant, solely to enable him to profitably and intelligently attend to the business of the defendant."   And, finally, we can do no better than to quote from *Witkop & Holmes Co.* v. *Boyce*, 61 Misc. Rep. 126, [112 N. Y. Supp. 874].   There it appeared that plaintiff was a corporation engaged in the general business in the city of Buffalo of dealing in teas, coffees, spices, etc.   It maintained branch stores in other cities, and as an inducement to its customers it gave trading stamps, redeemable at any of its stores.   A large part of its business was done through its agents and canvassers who were sent out by plaintiff and given a written list of the names and addresses of the customers.   These canvassers were assigned to specific routes and their work included the calling upon customers once a week and delivering to them the goods previously ordered.   The plaintiff's contract with the defendant, as in this instance, contained an express provision by which defendant agreed that upon leaving plaintiff's employ he would not solicit for another business from plaintiff's customers.   Defendant, as here, left plaintiff's employ and entered the employ of a competitor of plaintiff and immediately commenced to solicit orders from plaintiff's customers.   The court issued its injunction, saying:

"The plaintiff further contends that, independent of the contract between the parties and by virtue of general principles of equity, the defendant should be enjoined from enticing away or dealing with such of the plaintiff's customers as had theretofore given orders to the plaintiff through the defendant.   We think the plaintiff may well rest its case on the last ground alone, and that the injunction is well sustained on principle and well-considered authority. . . .

"The doctrine has been most frequently applied to cases where some secret process or formula of manufacture has been involved. . . . The principle of law, however, is not confined to secret processes of manufacture or methods of doing business, but has a much wider application, as stated by Mr. Justice Story. The names of the customers of a business concern whose trade and patronage have been secured by years of business effort and advertising, and the expenditure of time and money, constituting a part of the good will of a business which enterprise and foresight have built up, should be deemed just as sacred and entitled to the same protection as a secret of compounding some article of manufacture and commerce. . . .

"In recent years there has been developed, by the adjudications of our courts and by legislation, a considerable body of law looking toward the protection of the business world against unfair competition, and if we correctly interpret these decisions a court of equity stands ready to restrain such acts. We, therefore, are of the opinion that, independent of any express contract between the parties, equity will restrain the acts of which the plaintiff complains, and which the defendant threatens and claims the right to do. This arises out of a violation of duty having its origin in the relation of employer and employed, and an implied contract that an employee will not divulge confidential knowledge gained in the course of his employment, or use such information to his employer's prejudice."

The judgment appealed from is therefore affirmed.

Melvin, J., and Lorigan, J., concurred.