[S. F. No. 6905. Department One.—December 15, 1916.]

NEW METHOD LAUNDRY COMPANY (a Corporation), Appellant, v. JOHN W. MacCANN, Respondent.

Trade Secrets — List of Laundry Customers — Use of by Former Employee—Injunction.—A list of customers along a laundry route constitutes a trade secret which is the absolute property of the laundry company operating the route, and it is entitled to a judgment perpetually enjoining its former driver and solicitor to whom such list was confided, who had left its employ and accepted employ-

ment in a rival laundry, from in any manner soliciting laundry work from any of the persons who had been customers along the route assigned to him; but the former employee should not be enjoined from receiving laundry work from the customers of his former employer which is tendered him without any solicitation or act on his part.

ID.—PROTECTION OF EMPLOYER—RIGHTS OF EMPLOYEE.—While it is required that equity should lend its aid to the fullest extent to protect the property rights of employers, whether existing in the form of trade secrets or otherwise, considerations of public policy and justice demand that such protection should not be carried to the extent of restricting the earning capacity of individuals on the one side, while tending to create or foster monopolies of industry on the other.

ID.—INTRUSTING OF TRADE SECRETS TO EMPLOYEE—UTILIZING TO INJURY OF EMPLOYER.—If a person establishes a trade or business which depends for its continuance upon keeping secret the names of customers, or other valuable information known to such person, no agent or employee, having been intrusted with such secrets in the course of his employment, can thereafter utilize his secret knowledge against the interests or to the prejudice of such person.

ID.—RIGHT OF EMPLOYEE TO FOLLOW OCCUPATION—PROPERTY RIGHT.— Coincident with the right of the employer to the protection of his trade secrets against their unwarranted disclosure to or unconscionable use by persons not entitled thereto is the right of all persons, in the absence of negative covenants to the contrary, to follow any of the common occupations of life. This right of a citizen to pursue any calling, business, or profession he may choose is a property right, to be guarded by equity as zealously as any other form of property.

ID.—RIGHT TO RECEIVE PATRONAGE FROM FORMER EMPLOYER'S CUSTOMERS—RIGHTS OF CUSTOMERS.—To restrain a person lawfully engaged in a laundry business from receiving unlaundered goods from certain patrons of his former employer is to sanction, to that extent, the establishment of a trade blacklist, thereby depriving such patrons, without any fault on their part, of the right to have their laundry done where they will. The constitutional guaranties of liberty include the privilege of every citizen to freely select those tradesmen to whom he may desire to extend his patronage, and equity cannot invade or take away this right, either directly or indirectly.

ID.—FORM OF JUDGMENT—RECEIVING PATRONAGE.—A judgment in such a case enjoining a person from soliciting patronage from the customers of his former employer should not include the provision, "but not from receiving," as his right to receive patronage without direct or indirect solicitation is not in issue, but this phrase in the judgment is harmless.

APPEAL from a judgment of the Superior Court of Alameda County. W. S. Wells, Judge.

The facts are stated in the opinion of the court.

John R. Tyrrell, for Appellant.

Henry B. Lister, for Respondent.

LAWLOR, J.—This is an appeal upon the judgment-roll in an action for an injunction.

The case involves the same general equitable doctrines considered in *Empire Steam Laundry* v. *Lozier,* 165 Cal. 95, [Ann. Cas. 1914C, 628, 44 L. R. A. (N. S.) 1159, 130 Pac. 1180]), and *Cornish* v. *Dickey,* 172 Cal. 120, [155 Pac. 629]. It was held in the former case that a certain list of customers along a laundry route constituted a trade secret which was the absolute property of the laundry operating the route, and that the laundry was entitled to a judgment perpetually enjoining a driver, who had left its employ, "from in any manner soliciting or *receiving* laundry work from any of the persons" who had been such customers along the route assigned to him. (Italics ours.) In *Cornish* v. *Dickey* a solicitor, having left the employ of a bakery, was enjoined from soliciting and supplying his former patrons and the patrons of the bakery with the products of its rival. The soundness of these decisions under the facts involved is not questioned. But the proposition is now expressly advanced for the first time that, notwithstanding a court of equity has the authority to enjoin an employee from "soliciting" business of his former patrons under such circumstances, it is not authorized to issue an injunction restraining him from merely "receiving" laundry work from such customers if they voluntarily seek him out and hire him to do their work.

The salient facts presented here are in most respects identical with those of the Empire Steam Laundry case, and require, therefore, only brief mention. The court found that plaintiff is a corporation engaged in the laundry business in the city of Oakland, conducting its business in substantially the same fashion as did the Empire Steam Laundry. The defendant, formerly the independent owner of a certain laundry route in Oakland, known as route No. 4, had, on April 5, 1908, sold all his right and title in the route to the

plaintiff, and thereafter became one of its drivers and solicitors. He was supplied with an automobile by the plaintiff and everything necessary to enable him to serve well the plaintiff's customers and discharge the duties for which he was employed, without cost or expense to himself. For about five years he was employed to canvass orders for laundry work along route No. 4 from house to house, to collect and return the clothes, and to keep confidentially, in a list specially prepared by the plaintiff, all the names and addresses of plaintiff's customers, together with the day of the week when their laundry should be called for, and the place where the same should be gathered up and delivered. It is not questioned that the information thus obtained by the defendant constituted trade secrets of great value to the plaintiff. On April 5, 1913, the defendant left the plaintiff's employ without notice or warning, and immediately thereafter commenced soliciting for a rival laundry the patronage of the persons whose names he had ascertained while in the employ of the plaintiff. Thereafter he called for and gathered up bundles of laundry and unlaundered goods, but "so far as plaintiff has been able to ascertain by inquiries from its said patrons, said patrons did not know that the unlaundered goods called for by defendant were being collected for and being laundered by a laundry other than the laundry of plaintiff herein." It does not appear, however, that the defendant had entered into any contract of employment prohibiting such action on his part. But the court further found: "That if defendant is not restrained from soliciting, diverting, and taking away said customers of plaintiff, seventy (70) per cent of said trade will be forever lost to plaintiff, to its great damage."

Other facts are pleaded and referred to in the briefs, but were not found to be supported by the evidence. And certain matters occurring after the issuing of the preliminary restraining order are mentioned by counsel, but no supplemental pleadings were filed. None of these matters can properly be considered.

Upon the findings made, plaintiff was awarded a permanent injunction "restraining and enjoining said defendant, his agents and employees . . . from in any manner soliciting, *but not from receiving*, laundry work from any of the persons who were customers of plaintiff prior to the fifth day of April, 1913, along or upon that certain route known

and designated by plaintiff and defendant as route No. 4, of the New Method Laundry Company, in the city of Oakland, and attended to by said defendant, while said defendant was employed by plaintiff; and from in any manner attempting to induce any of said customers of said plaintiff, either directly or indirectly, to withdraw any of their business, custom, or patronage from plaintiff." (Italics ours.) The court did not award damages for the injuries alleged in the complaint to have arisen out of the immediate loss of trade. The appeal, however, is taken solely from the refusal to include in the judgment an order restraining the defendant from receiving laundry work of the persons designated.

While it is required that equity should lend its aid to the fullest extent to protect the property rights of employers, whether existing in the form of trade secrets or otherwise, considerations of public policy and justice demand that such protection should not be carried to the extent of restricting the earning capacity of individuals on the one side, while tending to create or foster monopolies of industry on the other. In recent years, as noted in *Empire Steam Laundry* v. *Lozier,* the matter of protecting the business world against unfair competition has received careful consideration by the highest courts. It has been determined that if a person establishes a trade or business which depends for its continuance upon keeping secret the names of customers, or other valuable information known to such person, no agent or employee, having been intrusted with such secrets in the course of his employment, can thereafter utilize his secret knowledge against the interests or to the prejudice of such person. (See 14 R. C. L., p. 401, secs. 102–105.) As is aptly stated in *H. B. Wiggins Sons' Co.* v. *Cott-A-Lap Co.,* 169 Fed. 150: "If he does so, he robs his employer." This was our conclusion in the Empire Steam Laundry case, and with what is there said in support thereof we are in full accord. It was also the conclusion of the court in the more recent case of *People's Coat, Apron & Towel Supply Co.* v. *Light* (March 17, 1916), 171 App. Div. 671, [157 N. Y. Supp. 15, 1142], where an injunction was granted, under circumstances similar to the facts presented here, restraining a rival firm from soliciting through Light, one of the plaintiff's former employees, any of plaintiff's former or present customers, and from serving the same on behalf of the rival

firm. The court said: "There is no evidence that Light had a written list of them [the plaintiff's customers]. There was in his head what was equivalent. They were on routes, in streets, and at numbers revealed to him through his service with plaintiff. Their faces were familiar to him, and their identity known because of such employment. He had entry and introduction, and solicited them, not as strangers, but as persons known to him. He used what he had gained through plaintiff to take away its customers."

But coincident with the right of the employer to the protection of his trade secrets against their unwarranted disclosure to or unconscionable use by persons not entitled thereto is the right of all persons, in the absence of negative covenants to the contrary, to follow any of the common occupations of life. This right of a citizen to pursue any calling, business, or profession he may choose is a property right to be guarded by equity as zealously as any other form of property. (See *Dent* v. *West Virginia*, 129 U. S. 114, [32 L. Ed. 623, 9 Sup. Ct. Rep. 231].) "Labor is property. The laborer has the same right to sell his labor, and to contract with reference thereto, as any other property owner." (*Gillespie* v. *People*, 188 Ill. 176, [80 Am. St. Rep. 176, 52 L. R. A. 283, 58 N. E. 1007].) It cannot, indeed, be questioned that an employee, in a case such as this, retains the right to work for a rival laundry if he so chooses, or, having established a laundry business himself, to serve all persons who voluntarily offer him their trade. But in such competition, he must act with utmost fairness, resolving every doubt rather in favor of the interests of the former employer than against them, and exercising, at all times, every precaution to avoid violating, in letter or spirit, the confidence reposed in him. In *Grand Union Tea Co.* v. *Dodds*, 164 Mich. 50, [31 L. R. A. (N. S.) 260, 128 N. W. 1090], a solicitor along a business route for a tea merchant engaged to work for a competitor and sought to take with him the list of patrons, and secure their patronage, which for the most part he had himself obtained for the tea merchant while in the latter's employ. Counsel contended: "This defendant cannot be restrained from soliciting or selling these people goods so long as he does so in an open and fair manner." A decree enjoining the solicitor "from using any list or copy of list which has been made or retained, or giving or showing them to others,"

was affirmed. The court then continued: "We are of the opinion, however, that he cannot be restrained from selling his commodities for himself or for any employer in any part of the city, or to any person, so long as he does not use any property belonging to the complainant, or copies thereof that were surreptitiously made. So far we think ourselves well within equity jurisdiction, on general principles." (See, also, note to *Empire Steam Laundry* v. *Lozier,* in 1 Cal. Law Rev. 385; and comment on *People's Coat etc. Co.* v. *Light, supra,* 25 Yale L. Jour. 499.)

The judgment of the lower court also finds support in sound principles of public policy. To restrain a person lawfully engaged in a laundry business from receiving unlaundered goods from certain former patrons is to sanction, to that extent, the establishment of a trade blacklist, thereby depriving such patrons, without any fault on their part, of the right to have their laundry work done where they will. The constitutional guaranties of liberty include the privilege of every citizen to freely select those tradesmen to whom he may desire to extend his patronage, and equity cannot invade or take away this right, either directly or indirectly.

There are, however, some authorities which are relied upon by the plaintiff to support his contention that he is nevertheless entitled to the injunctive relief prayed for. But in none to which we are referred was it necessary for the court to pass upon the precise point raised here. *Witkop & Holmes Co.* v. *Boyce,* 61 Misc. Rep. 126, [112 N. Y. Supp. 874], while generally approving an injunction restraining the defendant, among other things, "from calling upon, canvassing, soliciting, accepting, or filling orders for goods similar in kind to those carried by the plaintiff from the persons, . . . being customers of the plaintiff upon whom the defendant had been accustomed to call to obtain orders," was concerned principally with defendant's efforts to unfairly entice away plaintiff's customers. In that case, reliance was placed also upon an express agreement entered into between the parties which contained covenants against the defendant engaging in a similar line of business for the period of two years, as well as upon a penal statute forbidding an employee to use information gained under such circumstances for his own benefit or advantage. A second decision in the case (*Witkop & Holmes Co.* v. *Boyce,* 64 Misc. Rep. 374, [118 N. Y. Supp. 461]),

broadly restrains the defendant from "calling" upon the former customers for trade purposes, which term would include calling on legitimate as well as illegitimate business. But the facts indicate that the court was only considering a "gross betrayal of confidence by an unscrupulous employee" resulting in unfair competition. The employee was actually calling to solicit the trade of the former customers. The proposition of "calling" for the purposes of delivering goods or filling orders which had been received in an honest and equitable conduct of a rival business was not involved. A later case (*Witkop & Holmes Co. v. Great Atlantic & Pacific Tea Co.,* 69 Misc. Rep. 90, [124 N. Y. Supp. 956]) sums up the two previous decisions as holding that the driver "will be restrained from canvassing and soliciting trade from plaintiff's customers formerly served by him from plaintiff's lists of names and addresses for the benefit of a competing concern." (See, also, comment on these cases in *Boosing v. Dorman,* 148 App. Div. 824, [133 N. Y. Supp. 910].) Nor does it seem to us that *People's Coat etc. Co. v. Light,* 171 App. Div. 671, [157 N. Y. Supp. 15, 1142], is opposed to the conclusion reached herein.

In other New York cases we find expressions which support our view that the respondent herein cannot be restrained from "receiving" laundry of his former patrons. In *Peerless Pattern Co. v. Pictorial Review Co.,* 147 App. Div. 715, [132 N. Y. Supp. 37], injunctive relief restraining the manager of a rival firm from soliciting or filling orders from plaintiff's customers was expressly denied. The court remarked: "All that clearly appears is that he undertook to use in his new employment the knowledge he had acquired in the old. This, if it involves no breach of confidence, is not unlawful; for equity has no power to compel a man who changes employers to wipe clean the slate of his memory." It was there held that the defendant could "enter into competition with plaintiff, even for the business of those who had formerly been plaintiff's customers, providing such competition is fairly and legally conducted." Finally, in *Boosing v. Dorman,* 148 App. Div. 824, [133 N. Y. Supp. 910], the court, finding that the names of plaintiff's customers, retail dealers in butter and eggs, were all listed in public directories and were not, under the facts shown, trade secrets, went on to

say: "The other knowledge which Dorman acquired by calling upon these customers in the course of his employment, with regard to their habits of buying, their financial worth, and their individual characteristics and preferences, can hardly be denominated 'trade secrets' which an employee is prohibited from using for his own benefit after the termination of his employment, in the absence of an express contract."

Nor does *Lamb* v. *Evans*, L. R. [1893], 1 Ch. Div. 218, demand a different conclusion. The judgment in that case was to affirm, as regards the general question involved here, the former decision in the case by Mr. Justice Chitty (Id., L. R. [1892], 3 Ch. Div. 462), where an injunction was granted against canvassers for a trades directory. It was suggested by the evidence, so the learned justice observes, that unless the defendants be entirely restrained from soliciting advertisements from the list of traders published in the plaintiff's directory, such traders will be misled into believing that the defendants were still canvassing for the plaintiff. But the court, while recognizing the difficulty in framing a proper injunction touching these matters, held the defendants could not be restrained in such manner. The learned justice said: "To use the popular expression, they may go and legitimately tout for advertisements for the rival production, and legitimately use the plaintiff's work for the purpose of discovering the traders and showing them the kind of advertisement these same traders formerly approved of, and may be desirous of inserting in the rival work." We find nothing in the latter decision in any sense modifying this holding.

It must be admitted that the injunction issued by the lower court in the Empire Steam Laundry case, and approved by the decision of this court, does restrain an employee from "receiving" laundry of his former employer's customers. But the facts show the employee was actually disclosing and making use of the secret knowledge and information he had acquired in the confidence of his former employer, and that, by this means, had been able to carry the patronage of many of the former customers to the new employer. The employee's conduct, under the facts shown, clearly constituted an unconscionable and unwarranted use of the trade secrets belonging to his former employer, as well as a violation of the contract which he had entered into. It was to restrain this conduct that the injunction was issued. While the opinion

does not qualify the term "receiving," which appears in the injunction, there is nothing therein which indicates that the court intended to hold that an employee, in the absence of an express contract, could be restrained from carrying on a rival business in a fair and equitable manner, and in the course of such competition receiving laundry of such customers of the former employer who may voluntarily come to him. Indeed, the opinion does not discuss the term "receiving," and an examination of the briefs shows that the point was not urged for consideration.

But it is insisted by the appellant that "without the word 'receiving' the judgment would be practically worthless, in that it affords little or no relief." "It does not require a very vivid imagination," it declares, "to see the agents and friends of the defendant, or even the defendant himself, within an hour after the court has granted an injunction restraining defendant from soliciting, but not from 'receiving' laundry work, busily engaged in calling upon, or ringing up various customers, advising them of the court's order, but further stating to them that the driver will be pleased to call in the event of the customer sending for him." But appellant overlooks the comprehensive relief granted it by the court. The decree expressly forbids defendant from in any manner soliciting or attempting to induce, directly or indirectly, such customers to withdraw their patronage from plaintiff. Clearly, conduct on the part of the defendant, his agent, or others in his behalf, such as suggested, would be *contra bonos mores* and a deliberate invasion of the injunction issued to plaintiff. Discussing this point, the court in *E. I. Du Pont etc. Powder Co.* v. *Masland,* 216 Fed. 271, said: "The line which terminates the limits where the rights of the plaintiffs end and those of the defendants begin is a difficult one to draw. The iniquity of an employee who takes away with him the property of his employer, existing in the form of valuable processes, is as clear as if he asported any other form of property. The right of the employee to use his abilities, developed through his experiences, to the utmost of his capacity, is equally clear. This right of the employee and his obligation to preserve to the full the property rights of his employer are shaded into each other by lines so fine that it is doubtful whether anything but a nice sense of honor can keep them distinguished."

Injunctive relief, in any case, must depend upon broad principles of equity rather than on the particular wording of any decree. Conceivably, cases may arise where the court would be warranted in restraining a person, engaged in a business, from "receiving" trade of certain members of the community. But the facts presented here do not demand such relief. In *H. B. Wiggins Sons' Co.* v. *Cott-A-Lap Co.*, 169 Fed. 150, the court refused to restrain a rival firm from utilizing certain trade secrets, where the relief was prayed for solely because the rival had employed one of plaintiff's confidential employees who was in possession of the secrets. What the court there said applies with equal force to the additional injunctive relief sought here: "If the injunction issues, it means that hereafter no man can work for one and learn his business secrets, and after leaving that employment engage himself to a rival in business, without carrying on his back into that business the injunctive mandate of a court of equity. There is nothing whatever in the facts of this case, except opportunity to do wrong, and a suspicion in the mind of the rival that wrong will be done. The remedy asked for is an extraordinary one, and should not be lightly indulged in. The chancellor ought never to come into such a frame of mind that he assumes human nature to be essentially and inherently evil."

Judgment affirmed.

SHAW, J., and SLOSS, J., Concurring.—The phrase, "but not from receiving," should not have been inserted in the judgment. The defendant's right to receive laundry work from former patrons of the plaintiff along route No. 4, provided such work came to him without his direct or indirect solicitation, was not in issue, and was not disputed or attacked. The phrase was not necessary for the protection of the defendant in that right, for he would possess the right as fully under the decree without those words as with them. If defendant caused their insertion with the expectation that thereby he would be able to receive laundry work from said patrons, obtained or coming to him through any secret or clandestine use by him, or by his agents or friends, of the list of patrons of plaintiff along that route, or of his memory or knowledge thereof derived from his former employment with plaintiff, he will be disappointed, if the judgment is

enforced according to its true intent.   Notwithstanding that phrase, it enjoins him from in any manner attempting by any means, direct or indirect, to induce any of the patrons of plaintiff along route No. 4, formerly attended to by him, to withdraw any of their business, custom, or patronage from plaintiff.   Under this provision he would be guilty of contempt if he received any laundry work so withdrawn, and the phrase in question does not limit the effect of the judgment in that respect.   If he should merely go along the route to receive such laundry work of said patrons as they should offer him, he would be soliciting their patronage, and would be inducing them to withdraw from plaintiff all of their patronage that he might receive by so doing, and would thereby violate the injunction.   Hence, although the phrase might better have been omitted, we believe it to be harmless, and for that reason we concur in the judgment.