[Civ. No. 6316. First Appellate District, Division Two.—June 16, 1928.]

ROY V. ADKINS, Respondent, v. THE MODEL LAUNDRY COMPANY (a Corporation), Appellant.

576

Roland Thompson, James L. Allen and James L. Davis for Appellant.

A. E. Koepsel and L. A. West for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from the verdict of a jury and a judgment for damages for $2,000 for an alleged breach of contract with a laundry company for commissions for washing clothing.

The appellant Model Laundry Company, a corporation, was engaged in the laundry business at Santa Ana. The defendants C. C. Blanchard, Albert Blanchard, and E. W. Walker were directors of the corporation. The complaint alleged that Walker was the personal owner of Model

Laundry Route No. 1 in Santa Ana, having the exclusive right to collect laundry in that district for said company, with which he had an agreement to wash all laundry collected by him from said route for a commission of twenty-seven and one-half per cent of their regular list price; that on January 15, 1920, Walker sold to respondent said laundry route together with one Ford automobile for the sum of $1,000; that prior to the consummation of this sale the plaintiff told defendant Albert Blanchard, who was then the president of said corporation, of the proposed purchase, and that Blanchard "acquiesced, consented and approved of said sale"; that with Blanchard's consent the plaintiff purchased said route and proceeded to "collect and deliver laundry from said route, . . . and took all of said laundry to the defendant Model Laundry Company and had it washed under the above agreement," until November 16, 1923; that the laundry company then placed another driver on said route, to whom it supplied the list of names and addresses of plaintiff's customers, and then attempted to dismiss plaintiff from their employment, addressing letters to his customers advising them of plaintiff's discharge and requesting the delivery of all packages of washing to one George Clough, who would thenceforth represent the laundry company in said district; that the laundry company thereby enticed plaintiff's customers to desert him, impaired the value of his said laundry district and decreased his income therefrom to his damage in the sum of $5,000.

A second cause of action was set forth in the complaint to which a demurrer was sustained. The respondent failed to amend this cause, and it therefore lapsed. A general and special demurrer to the first cause of action was also filed, charging that it failed to state adequate facts; that it was uncertain as to how plaintiff became the owner of the laundry route, and that the terms of the alleged contracts between Walker and the laundry company and between plaintiff and the laundry company were uncertain. This demurrer was overruled, and the defendants filed their answer categorically denying each material allegation of the complaint. As a separate defense, the appellant alleged that it was the owner of the laundry route; that the respondent was its agent and employee hired for the purpose of collecting laundry in said district, and that he was

discharged for unsatisfactory service on November 17, 1923. At the beginning of the trial appellant objected to the introduction of evidence on the grounds enumerated in the demurrer. This objection was overruled.

The evidence was conflicting, but it satisfactorily appears that respondent paid Walker $1,000 for a Ford automobile and the exclusive right to gather and deliver laundry to the Model Laundry Company from said route. Before purchasing the route from Walker the respondent had a conversation with Albert Blanchard, who was then the president of the laundry corporation. All that the evidence discloses respecting the alleged agreement with the laundry company appears in the testimony of respondent, as follows: ''Q. What was said. . . . A. We asked him (Albert Blanchard) if it was perfectly all right for me . . . to buy the route, and if he was perfectly willing, and he said he was, or words to that effect. . . . Q. In this conversation with Mr. Blanchard, what was said, if anything, in regard to who was to do the washing? A. I don't know as there was anything said as to that. Walker was getting the laundry done there, and that is what he was selling—the Model Laundry to do the washing at 72½ per cent. . . . Q. What did Mr. Blanchard say with reference to doing the washing, if anything? A. He said it was all right with him, to go ahead and make the deal, and he would take care of us the same as he had before.''

For nearly three years after the purchase of the route respondent collected laundry from this district and had it washed at the Model Laundry for seventy-two and one-half per cent of its regular rate of charges, collecting from his customers the full list price for such laundry. This left respondent twenty-seven and one-half per cent of the list price for his own services, which averaged about $75 per week. Difficulties arose between the appellant and the respondent, and on November 16, 1923, the appellant refused to accept or wash any more laundry for respondent, and thereupon employed a driver by the name of Clough to take charge of said district, furnishing him with a list of respondent's customers to whom letters were mailed notifying them that respondent no longer represented the laundry company, and advised the customers to patronize Clough, who immediately began to canvass the district and

succeeded in procuring patronage from some of respondent's former customers. The respondent continued to regularly solicit and collect laundry from this district, delivering it to the Sanitary Laundry, a competing organization, with which he procured an agreement to retain for his services thirty per cent of their regular charges. The respondent, however, testified that owing to the appellant's interference with his laundry route and customers he lost business, which decreased his commissions on an average of $35 to $40 per week, which loss aggregated from $940 to $960 prior to the filing of the complaint. At the close of plaintiff's case a motion for nonsuit was made and granted as to the individual defendants, but denied as to the laundry company. The jury rendered a verdict against appellant for $2,000 damages.

■ This case seems to have been tried on the theory that the measure of damages was the loss of commissions sustained by virtue of appellant's wrongfully enticing respondent's customers from him. It is apparent that appellant's refusal to continue to wash respondent's laundry for seventy-two and one-half per cent of the regular list prices was not an element of damages, for respondent immediately made a much better bargain with the Sanitary Laundry, which allowed him thirty per cent of its regular schedule of prices. There are no definite allegations in the complaint that appellant ever agreed orally or in writing to wash respondent's laundry for any specified sum, or at all. Assuming, however, that such an agreement was made, there are neither pleadings nor evidence regarding the term during which this contract was presumed to continue. Evidently the trial court assumed that the damages in this case would be measured by the loss sustained by enticing respondent's customers away from him. But this was not an equitable action for injunctive relief to prohibit interference with the goodwill of a business, or confidential business relations affecting individual customers of a particular laundry route, under which circumstances damages are merely incidental to the injunctive relief which is sought. Under the pleadings plaintiff was compelled to rely upon the theory of a breach of contract to wash laundry for an agreed price. But the complaint failed to allege such a contract with sufficient certainty, and the demurrer should have been sus-

tained. ██ If the complaint be deemed to charge appellant with damages for interference with the customers of his laundry route, the respondent has mistaken his remedy, for such an action at law will not lie. ██ If the complaint be deemed to charge damages for breach of a contract to wash laundry at seventy-two and one-half per cent of the usual schedule prices, the evidence fails to show that respondent sustained a loss of this nature, for he immediately made a contract with the Sanitary Laundry Company for seventy per cent of the schedule prices. Section 3301, of the Civil Code, provides: "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." ██ Moreover, since no time was fixed by either the pleadings or the evidence, during which the alleged contract was to continue, it could be terminated at will by either party. In 1 Williston on Contracts, p. 59, section 38, it is said: "A promise which contemplates continuing performance for an indefinite time has been construed as stipulating only for performance terminable at the will of either party." (*Joliet Bottling Co.* v. *Joliet Citizens' Brewing Co.*, 254 Ill. 215 [98 N. E. 263]; *Gage* v. *Village of Wilmette*, 315 Ill. 328 [146 N. E. 325]; *Arkansas Valley T. & L. Co.* v. *Atchison, T. & S. F. Ry.*, 49 Okl. 282 [151 Pac. 1028, 1032]; *Davis* v. *Fidelity Fire Ins. Co.*, 208 Ill. 375 [70 N. E. 359].) ██ If the contract on the part of the laundry company can be said to be an agreement to allow respondent twenty-seven and one-half per cent of schedule prices for washing laundry, as compensation for collecting and delivering the packages from a certain district, regardless of who owned the territory, the agreement would be indefinite for failure to limit the duration of the contract. In 6 California Jurisprudence, p. 218, sec. 143, it is said: "If the . . . consideration be personal services, the agreement for such services must be definite and certain, not only with reference to their nature and character, but also with reference to the time of their continuance." Section 1999 of the Civil Code provides: "An employment, having no specified term, may be terminated at the will of either party, on notice to the other." ██ Under the circumstances of this case, where absolutely no limitation of time was fixed for the performance of services in washing laundry for a specified price, we are of

the opinion that the laundry company was privileged to terminate the contract at will, without becoming liable for damages therefor. In the case of *Otten* v. *Spreckels*, 183 Cal. 252, 259 [191 Pac. 11, 13], which was a suit for damages for breach of contract in discharging an agent employed to take charge of a newspaper route, who was paid commissions upon the newspapers which he sold, judgment in favor of the agent was reversed, and the court said: " . . . where the agency is revocable at will, as in this case, he has no interest or right which he can assert against his principal who revokes it, as the basis for damages for such revocation. . . . The agency being terminable at will by the principal and being for an indefinite term and without a valuable consideration, its revocation was not a breach of the contract. The plaintiff has no cause of action and the judgment should have been for the defendant." The same principle applies to the present case. Regardless of which party was the employer, either had a right to terminate the employment at will. The respondent paid no valuable consideration to the appellant for the contract. Walker was the individual owner who sold the laundry route to the respondent, and the Model Laundry Company was not a party to the contract of sale, and is not bound by the terms thereof. A mere agreement of agency or employment existed between the appellant and the respondent, which was continuing in its nature and failed to specify a limitation of duration. It was therefore terminable at the will of either party.

Regardless of whether respondent or the laundry company be deemed to be the employer, a confidential relationship existed between them in regard to the names and addresses of respondent's customers in his laundry district. The appellant had no lawful right to divulge its knowledge of the names and addresses of respondent's customers, nor use the information secured by virtue of their business relationship to alienate customers from the respondent or acquire them for its own benefit. Unlawful interference with property rights in the goodwill of a business, or the benefits of trade or patronage of a specific list of customers in a definite laundry route, may be protected by injunctive relief in a court of equity. (14 Cal. Jur., p. 198, sec. 17; *New Method Laundry Co.* v.

*MacCann,* 174 Cal. 26 [Ann. Cas. 1918C, 1022, 161 Pac. 990]; *Cornish* v. *Dickey,* 172 Cal. 120 [155 Pac. 629]; *Empire Steam Laundry* v. *Lozier,* 165 Cal. 95, 102 [Ann. Cas. 1914C, 628, 44 L. R. A. (N. S.) 1159, 130 Pac. 1180]; *Mackechnie Bread Co.* v. *Huber,* 60 Cal. App. 539 [213 Pac. 285]; *Olschewski* v. *Hudson,* 87 Cal. App. 282 [262 Pac. 43].) But there is no such property right in the intangible interest of an exclusive privilege to collect laundry or sell newspapers in a specific district, which will authorize damages in a suit at law for conversion or trover. (*Olschewski* v. *Hudson, supra.*) In the case last cited it is said: "Manifestly a laundry route does not consist solely of a specific district or territory, nor does it consist of a vested right to or monopoly of the patronage of all the residents of said district. Competing laundry companies may possess independent lists of customers residing in the same house, block or district. . . . No laundry company may have a vested property right to claim as customers, particular individuals, nor all the residents of a specific district. The field is open for fair competition on the part of any and all who desire to solicit patronage." ▮ If a suit at law for damages for the conversion of a laundry route as a whole will not lie, neither will such a suit at law lie for damages for the conversion of the patronage of individual customers in a specific route. It follows that the measure of damages in the present case cannot be based upon the detriment sustained by the loss of customers through the inducements of appellant.

▮ In spite of the fact that a demurrer had been sustained to the second cause of action which was based upon a claim for damages for the loss of a prospective sale of the laundry route through the opposition of appellant, and that this cause of action was abandoned, the court erroneously permitted evidence of this nature to be received over the objection of the appellant. C. C. Blanchard was permitted to testify: "Q. Mr. Blanchard, do you remember . . . you had a talk with Mr. Adkins, relative to buying . . . the route? . . . A. Well, he was given the opportunity to get someone to buy it if he could. . . . Offers were made to him several times. . . . He was offered $1200." Mr. Hart was also permitted to testify over objection: "Q. What was said by Mr. Blanchard in regard to buying . . . his route?

. . . A. He said Mr. Adkins was asking too much. . . . The original price asked for the route by Mr. Adkins, was $1700. I said to Mr. Blanchard, 'Do you consider this fair?' And he said, 'I don't.' And I said, 'Well, what do you consider a fair price?' And he said, '$1500.' '' The alleged defeating of a prospective sale of the laundry route, and consequential damages therefor, was not an issue in the case. This evidence was prejudicial. (*Riverside Water Co.* v. *Gage,* 108 Cal. 240, 245 [41 Pac. 299].)

The court also erred in giving certain instructions which assumed that damages in this case might be predicated on the detriment sustained by a violation of confidential information on the part of appellant with respect to the names of respondent's customers, and the wrongful means of inducing his customers to patronize the appellant. These acts might have been prohibited by injunction, but they were not an issue in this case, and furnished no proper measure of damages for a mere breach of contract. Among these prejudicial and erroneous instructions, so given, were the following: '' . . . You may award him such damages . . . arising from the defendant Model Laundry Company writing letters to plaintiff's customers in said route informing them that plaintiff would be succeeded by another person upon said route representing said Model Laundry Company . . . and by supplying him with a list of names and addresses of the customers whom plaintiff had served, . . . and that plaintiff thereby lost customers in or upon said route, and was deprived of . . . the profits therefrom. (If you find these to be facts) you will find for the plaintiff such damages as you may believe from all the circumstances, he has sustained. . . . '' And the following in part: '' . . . If you believe from a preponderance of the evidence that Roy V. Adkins purchased said laundry route and list of customers from Walker, and . . . entrusted (the list of customers) to the defendant, . . . and that said defendant . . . used the same against the interest, or to the prejudice of the said Adkins, then you should find for the plaintiff, provided also you find from a preponderance of evidence, that damages, if any, proximately resulted therefrom to the plaintiff.''

It is apparent that the trial court erroneously assumed that damages for a tort in wrongfully divulging trade secrets

and appropriating the customers of respondent were a proper measure of compensation in the present action. But a remedy for such intangible property rights does not exist in a mere suit at law for the breach of a contract.

For the foregoing reasons the judgment is reversed.

Nourse, J., and Koford, P. J., concurred.