(57 Misc. Rep. 1.)
#### In re JACKSON, Attorney General (two cases).

##### (Supreme Court, Special Term, New York County.)

MONOPOLIES—COMBINATION—RESTRAINT OF TRADE.

The Donnelly anti-trust act (Laws 1899, p. 1514, c. 690), providing for the prevention of monopolies in the manufacture, production and sale of commodities, and for the punishment of such monopolies, does not apply to telegraph companies; and hence an order directing certain persons as officers and directors of the offending telegraph companies to appear before a referee to testify regarding contracts between them as a preliminary to the institution of an action under said law will be set aside.

Applications by William S. Jackson, Attorney General, under the Donnelly anti-trust act (Laws 1899, p. 1514, c. 690), directing Clarance H. Mackey and others to appear before a referee for examination. Motions by respondent to set aside ex parte orders of reference. Motions granted.

William S. Jackson (W. A. De Ford, of counsel), for the Attorney General.

J. H. Fearons (H. D. Estabrook and F. R. Stark, of counsel), for Western Union Telegraph Co.

W. D. Cook (Thomas Jones, of counsel), for Postal Telegraph & Cable Co.

HENDRICK, J. These are motions to vacate and set aside orders of reference granted ex parte in these proceedings in pursuance of an application by the Attorney General, under chapter 690, p. 1514, Laws 1899, sometimes called the "Donnelly Anti-Trust Act." The petition of the Attorney General, upon which the orders were granted, sets forth that the petitioner, as such Attorney General, intends to begin an action, under chapter 690, p. 1514, Laws 1899, in behalf of the people of the state of New York, against the "Postal Telegraph & Cable Company" and the "Western Union Telegraph Company," domestic corporations organized and existing under and by virtue of the laws of the state of New York, and engaged in the business of receiving, transmitting, and delivering messages by electric telegraph in the state of New York and elsewhere, to restrain the said telegraph companies, their officers, or agents, from doing in this state any act in, towards, or for the making or consummation of the contracts, agreements, arrangements, or combination set forth in the petition. The petition alleges that said companies are engaged in the business of receiving, transmitting, and delivering messages by electric telegraph for pay, and that said telegraphic service is an article and commodity in common use in the state of New York. It also alleges that said companies have entered into an agreement to charge rates mutually agreed upon between them for the transmission of telegrams, and sets forth various charges agreed to be made for the transmission of telegrams to various points, and that, by the establishment of said rates for transmission of telegrams from the state of New York to such other points, the rates of charge have been materially increased by both of said

companies. It further alleges that said companies have agreed that they would establish at certain common points of service in certain cities, towns, and villages in the state of New York common offices and agencies for the receipt and transmission of messages as aforesaid under an agreement for a division between the said companies of the receipts and profits from the business thereof, and that they would divide equally between them the gross proceeds of the business transacted in certain hotels and other public places in the city of New York in which they were each maintaining offices. It also alleges that said contracts and agreements are an arrangement and combination whereby a monopoly in the receipt, transmitting, and delivery of telegrams in this state is maintained, and whereby competition in this state in the price of transmitting telegrams is prevented, and the free pursuit of the business of transmitting telegrams is restricted and prevented. As a preliminary to the institution of said action by the Attorney General, the court was asked for orders directing various persons who are officers and directors of the Western Union Telegraph Company and of the Postal Telegraph & Cable Company to appear before a referee to testify regarding said contracts and arrangements, and to produce before the referee various contracts, records, books, and papers of said companies which contain evidence of the terms of said contracts and combination. The general purpose of chapter 690, Laws 1899, is expressed in its first section. Its object is to destroy monopolies in the manufacture, production, and sale in this state of commodities in common use. The act in this respect has been held to be little more than a codification of the common law on the subject (Matter of Davies, 168 N. Y. 89–101, 61 N. E. 118, 56 L. R. A. 855; In the Matter of Application of the Attorney General, etc., v. Consolidated Gas Company [Sup.] 106 N. Y. Supp. 407), and is to be construed with reference to the common law. The vital question to be determined in this matter is whether or not a telegraph company manufactures, produces, or sells a commodity or article in common use, such as is within the prohibition of said act. If it does, then the motions should be denied. If not, they should be granted.

Telegraph companies are not included in the Donnelly anti-trust act. Whether or not the service of transmitting from one place to another a communication is a "commodity" in any contingency, it is not a commodity within the meaning of the act under consideration. The Donnelly anti-trust act, as is shown by its history and by all of the proceedings in the Legislature prior to its passage, had for its object the prohibition of monopolies in tangible articles of trade and commerce in common use and such as are capable of manufacture, production, and sale. Senate Journal of 1897, January 15th, p. 43; January 20th, pp. 67–69; Resolution January 15th, p. 50. The resolution appearing in the Senate Journal of 1897, at page 50, indicates clearly, when read in connection with the laws referred to therein (chapter 716, p. 1782, Laws 1893, and chapter 267, p. 212, Laws 1896), the evils to remedy which the Donnelly anti-trust act was passed. Chapter 716 of the Laws of 1893, to which reference is made in the resolution, is entitled, "An act to prevent monopolies in articles of general necessity," and provides in the first section that:

"Every contract or combination in the form of trust or otherwise, made after the passage of this act, whereby competition in the state of New York in the supply or the price of any article or commodity of common use in said state for the support of life and health may be restrained or prevented, for the purpose of advancing prices, is hereby declared illegal."

Chapter 267, Laws 1896, amends chapter 716, Laws 1893. Both these laws were repealed by the act under consideration. They are all in pari materia, relating to the same subjects, and prohibiting combinations in the manufacture, sale, or production of commodities in common use "for the support of life and health." To apply on these motions a doubtful meaning to the term "commodity," in view of the evils aimed at by the Donnelly anti-trust act as disclosed by the history of the act itself and of the legislation of which it was the culmination, would be contrary to firmly established principles of construction. As was said by Mr. Justice Daniel in Maillard et al. v. Lawrence, 16 How. (U. S.) 261, 14 L. Ed. 925:

"The popular or received import of words furnishes the general rule for the interpretation of public laws as well as of private and social transactions."

In the popular and received import of the word, a "commodity" is a tangible article; and, in view of the laws of this state relating to telegraph companies, it would be wresting the meaning to a particular purpose to hold that the service or labor of transmitting a telegram is such a commodity as is contemplated by the act under consideration. Chapter 690, Laws 1899, makes no reference to the laws relating to telegraph companies, nor does it seek to repeal such laws, nor does it repeal all laws inconsistent therewith. The repealing clause specifies only chapter 383, p. 310, Laws 1897. If the laws relating to telegraph companies confer upon the companies involved in these motions the right to do the things complained of, the act under consideration does not impair such right. The case of Whipple v. Christian, 80 N. Y. 523–526, holds it to be a well-settled rule that "a special act will not be deemed repealed by implication in consequence of the passage of a general law, containing a general repealing clause of inconsistent legislation." That telegraph companies in this state enjoy the protection of special statutes and enjoy special rights, powers, and privileges is demonstrated in Benedict v. Western Union Telegraph Company, 9 Abb. N. C. 214, and in Hatch v. American Union Telegraph Company, 9 Abb. N. C. 223. In the Benedict Case, supra, after referring to the express powers granted to telegraph companies by the laws of this state, Mr. Justice Van Brunt says (page 220 of 9 Abb. N. C.):

"What arrangements two telegraph companies could make in reference to the conduct of their business which would not be protected and come within the scope or meaning of the foregoing acts I am totally at a loss to imagine. * * * It would seem to have been the intention of the Legislature to give to telegraph companies the power to make any and all arrangements for the conduct of their business, either jointly or separately, which natural persons could possibly enter into, requiring, in some instances, to such arrangements, the consent of three-fifths or two-thirds, as the case may be, of the directors and stockholders of the corporation. * * * Such being the intent of the Legislature, as is abundantly evidenced by the broad and general language of the act above referred to, it would be difficult to say that any arrangement

for the conduct of their business which might be entered into between two telegraph companies could be ultra vires if duly assented to by their stockholders, provided the same was not clearly against public policy."

And further on in the opinion in this same case, the facts in which are very like those in the case under consideration, the learned justice continues:

"In the absence of any legislation, it might be argued, as I have said, that such arrangements were against public policy, as tending to prevent competition; but in view of the legislation which authorizes the consolidation of these corporations, the purchase and sale of their franchises, the joint construction and use of telegraph lines, all of which tend to prevent competition, it cannot be said that any such public policy is countenanced by the Legislature of this state."

In the Hatch Case, another learned justice (Mr. Justice Barrett) agrees with the views expressed by Mr. Justice Van Brunt in the Benedict Case. The following extracts from the opinion of Justice Barrett are very pertinent to the matters under consideration on the motions now before the court:

"It is also urged that the consummation of this agreement will result in giving to the corporation vendee a practical monopoly of the business of telegraphy in this country; that competition, for the present at least, will be at an end; and that the Western Union Telegraph Company will thus have the power to increase rates with substantial impunity. All this is vehemently denounced as contrary to public policy, and in its tendency injurious to trade and commerce. * * * We repeat, then, that considerations of policy in the sense of general public feeling cannot avail in the courts against express legislative authority constitutionally granted. We are not to feel the public pulse before making up our minds to enforce the law. That would be an unwarrantable usurpation of the legislative function, and would throw all legal rights into a sea of doubt and confusion. As was said by Chief Justice Marshall, in Osborne v. United States Bank, 9 Wheat. (U. S.) 738, 866, 6 L. Ed. 204: 'Judicial power is never exercised for the purpose of giving effect to the will of the judge, always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law.' * * * The court may even have a pretty decided opinion as to the transaction under consideration, but no useful purpose is served by the expression of an opinion not essential to judicial judgment. If we cannot properly restrain these people by such judgment, our opinion as to their conduct will have little weight to check the completion of their design."

The reasons urged upon the court by the learned Attorney General for the denial of these motions might be laid before the Legislature, to the end that laws may be enacted to correct any evils found to exist under the present statutes of this state. It is my duty simply to declare the law as I find it; and, after very careful examinations of the questions involved, I am of the opinion that the motions should be granted.

The motions to vacate and set aside the orders herein granted ex parte July 8, 1907, are granted.