[Civ. No. 9359.   Third Dist.   Jan. 6, 1959.]

PARACO, INC. (a Corporation), Appellant, v. JOHN CARL OWENS, Respondent.

Rowell, Lamberson & Thomas and Breckinridge Thomas for Appellant.

Rowland & Paras and Darrell E. Pierce for Respondent.

VAN DYKE, P. J.—Action to restrain unfair competition. From a judgment denying relief plaintiff appeals.

Appellant is a corporation engaged in the business of collecting used lubricating oils, hereinafter referred to as drain oil, from service stations and garages throughout the State of California. For collection purposes appellant divides the state into several areas, one of which is from Lodi to Yreka and from the Coast Range Mountains to Reno, Nevada. Respondent was an employee of appellant, whose duties as such for several years were those of a tank truck driver picking up drain oil in the described area. After collection the oil was stored for later processing.

The record presents considerable factual conflict. The contention on appeal is that essential findings are not supported by the evidence. Resolving conflicts in support of the findings the evidence may be summarized as follows: Drain oil is a

waste product. It presents disposal difficulties. It cannot be gotten rid of by dumping into sewers or drain ditches and disposal otherwise is expensive. As a result businesses that produce it accumulate it in sumps and surface containers and generally allow any person desiring drain oil to take it from their premises without cost. Ordinarily, these businesses do not save drain oil for any particular person desiring it, but give it away to those who will come and collect it on a first come, first served basis. In the geographical area assigned to respondent by appellant there were a number of competitors for drain oil. There were at least two other companies collecting it and there were numerous individuals and governmental agencies who, from time to time, wanted to and did secure drain oil for their uses. Those desiring drain oil call upon the service stations and garages, and secure permission to take the oil accumulated in the sumps or other receptacles. Service stations and garages and the like at which drain oil is accumulated are generally located on well-traveled and well-known streets or highways. Their names and locations are listed in numerous directories, such as telephone and city directories and in lists compiled by oil companies of stations and garages using their products, all of which are available to anyone seeking that information. Appellant does not maintain any record of the names and addresses of the service stations and garages where drain oil is accumulated and keeps no record of the oil storage capacity of individual stations and garages. Its drivers do, however, gain knowledge of such matters as they go about their areas. There was no record of the time or frequency of picking up oil at any particular station or garage. Respondent, too, never compiled any such records from his experience in collecting drain oil in his territory while employed by appellant. During the several years he was employed he was not introduced personally to the producers of drain oil except that on one occasion in Reno, Nevada, he was so introduced by another of appellant's employees. However, during the period of his employment, appellant did become personally acquainted with many of the producers of drain oil, but his ability to secure permission to pick up drain oil did not depend substantially on such personal acquaintanceship. Appellant's ability to secure drain oil in competition with other collectors did not depend upon any confidential information with regard to the most economically feasible time to pick up the oil at different service stations and garages nor upon any other secret or confidential

information. After about three years' employment by appellant, respondent left his employment. He had already purchased a tank truck suitable for collecting drain oil. He at once began to work the same territory he had worked while employed by appellant and went from place to place soliciting permission to pick up drain oil from the stations and garages where he had procured it while working for appellant and wherever else it could be had. In the week following his quitting respondent advised appellant's employee who succeeded him where he had last picked up oil and where oil would be available. That employee went to the localities indicated by respondent and was able to secure drain oil without difficulty. Respondent did not conceive his plan to collect and sell drain oil with any intent to injure appellant. There was nothing in the nature of a regular route of call developed or used by respondent during or after his employment by appellant. On cross-examination respondent testified as follows: In respondent's experience he found that once the garages and service stations started giving him drain oil they continued giving it to him. In developing the area he visited all of the service stations where he hoped to pick up oil and made contact with the proprietors. He requested permission to pick up the oil. He told them he was working for Paraco. In certain areas he gave the proprietors soap and floor sweeping material in return for permission to pick up the oil. He maintained contact with them as much as he could with the purpose of keeping out competition. To some extent he depended upon their good will for the continued privilege of picking up oil. As much as he could he learned the size of their sumps and other storage receptacles. It was important for him to know how often the station had to be visited. If a station had very little oil, then, as a general rule, he favored the larger stations. Some stations give oil to farmers for road oil. The proprietors gave oil to whomever they wished, but when the season was over they let respondent have it again. He found, as he continued, the proprietors would save their oil for him and it is a fact that many of them do save their oil for a particular person. The reason is that they get good service and have a friendly contact with that person. Respondent developed contacts and friendly relations while in appellant's employ so as to retain the privilege of picking up oil from the proprietors of those places. In the Sacramento area itself appellant's sources of drain oil comprised only 15 per cent of the total number of producers and its competitors picked up the other 85 per cent,

but in the area north of Sacramento the appellant's sources of drain oil during its employment of respondent took in about 50 per cent of the total number of producers. When respondent quit his employment with Paraco it was his intention to pick up from the contacts he had made whatever oil he could get. He intended to do that before he quit and he purchased a truck and had it equipped to pump out the various sumps. He did not tell Paraco he was going into competition with them. He quit June 29th and he started picking up oil on his own account a few days later. During the first week he kept the knowledge from Paraco that he was picking up oil in competition; he considered that was his business. When he went into the business he picked up oil from whatever sources were available, including the sources from which he had obtained oil for Paraco.

When respondent had been operating on his own for about one month, Paraco began this action. The trial court granted a preliminary injunction enjoining respondent from collecting from places where he had obtained drain oil for appellant. This injunction was continued in force until the judgment herein which discharged it. During the period of seven weeks between his leaving appellant and the issuance of the restraining order, respondent picked up from appellant's former sources 41,737 gallons of drain oil which he sold to Brighton Oil Company at 3½ cents a gallon, making a total return to him of $1,460.79. This gallonage amounted to about half appellant's normal supply from that area.

The Supreme Court said in *Continental Car-Na-Var Corp.* v. *Moseley*, 24 Cal.2d 104, 110 [148 P.2d 9]:

"Equity will to the fullest extent protect the property rights of employers in their trade secrets and otherwise, but public policy and the natural justice require that equity should also be solicitous for the right inherent in all people, not fettered by negative covenants upon their part to the contrary, to follow any of the common occupations of life. Every individual possesses as a form of property, the right to pursue any calling, business or profession he may choose. A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of those who had formerly been the customers of his former employer, provided such competition is fairly and legally conducted. . . .

". . . [E]quity will intervene to restrain an employee from divulging confidential information gained in the course

of his employment or using such information to his employer's prejudice. . . . The courts regard as unfair competition, and will enjoin, the use by an employee to the prejudice of his former employer of the confidential information gained by the employee during his prior employment as to the business secrets of such employer.''

■ Where the facts of the case do not justify the application of the principle governing the rights of the parties in connection with delivery routes, a former employer seeking injunctive relief against a former employee must show: (1) The information was confidential and not readily accessible to competitors; (2) The former employee solicited the customers of his former employer with intent to injure him; (3) The former employee sought out certain preferred customers whose trade is particularly profitable and whose identities are not generally known to the trade; (4) The business is such that a customer will ordinarily patronize only one concern; (5) The established business relationship between the customer and the former employer would normally continue unless interfered with. (*Aetna Building Maintenance Co.* v. *West,* 39 Cal.2d 198, 204-205 [246 P.2d 11]. See also *California Intelligence Bureau* v. *Cunningham,* 83 Cal.App.2d 197, 202 [188 P.2d 303], and cases there cited.)

■ From the facts narrated it is clear that the evidence before the trial court justified its finding as a matter of fact that none of the tests of unfair competition stated in *Aetna Building Maintenance Co.* v. *West, supra,* were met by the proof in this case. We think the court justifiably found that the information was not confidential and was readily accessible to competitors; that respondent did not solicit permission to take drain oil from those whose permission he had received while working for appellant with intent to injure appellant (the intent to divert business through the exercise of legitimate trade practices is not an intent to injure the business of plaintiff) (*Continental Car-Na-Var Corp.* v. *Moseley, supra,* p. 112); that there was no such thing involved as a preferred list of customers whose trade was particularly profitable and whose identities were not generally known to the trade; that the business was not such that a customer would ordinarily patronize only one concern; and, finally, that the business relationships with the producers of drain oil were not such that they would normally continue to patronize only one person.

The testimony was ample to sustain a finding that this case

is not a so-called "route" case in which patrons usually want and expect to patronize a single route driver as is the situation presented by such cases as laundry route cases.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied January 29, 1959, and appellant's petition for a hearing by the Supreme Court was denied March 4, 1959.