[Civ. No. 23881.    Second Dist., Div. One.    Apr. 28, 1960.]

WESTERN ELECTRO-PLATING COMPANY (a Corporation), Respondent, v. LEWIS HENNESS et al., Appellants.

E. O. Leake and J. J. Leake for Appellants.

Riedman, Dalessi, Beyer & Riedman, William T. Dalessi and Fred Riedman, Jr., for Respondent.

WOOD, P. J.—This is an appeal by defendants from the portion of a judgment which enjoined defendants from soliciting, and from accepting, business from certain former customers of plaintiff.

Appellants contend that the evidence does not support the findings on which the injunction was based.

Plaintiff, for approximately eight years, has been in the business of chrome-plating automobile accessories in Long Beach. It employs driver-salesmen whose duties are to solicit business from automobile dealers and repair shops, to pick up accessories to be chrome-plated, and to return the accessories after they have been plated. Plaintiff assigns a territory to each driver-salesman, and no other employee of plaintiff is permitted to solicit business in that territory. In March, 1955, plaintiff employed defendant Henness as a driver-salesman, assigned a certain territory to him, and gave him a list of plaintiff's customers in that territory. In November, 1955, plaintiff employed defendant McCormick as a driver-salesman, assigned certain territory to him, and gave him a list of plaintiff's customers in that territory. Plaintiff paid Henness and McCormick a commission of 20 per cent of the net amount

charged to customers and guaranteed that each of those employees would be paid at least $250 a month. Each of those employees used his own truck and paid the expenses of operating and maintaining the truck. They called on the customers in their respective territories once or twice a day, and they usually traveled on regular routes and made the calls at approximately the same time each day. About July, 1957, each of those employees (Henness and McCormick) gave to defendant Whetnall $1,000, and, about September, 1957, each one gave Whetnall $4,000. In October, 1957, Whetnall Plating Company commenced the business of chrome-plating automobile accessories in Compton. Between July 1, 1957, and December 16, 1957, defendant Henness told certain customers in his territory that he was going into the chrome-plating business, and he asked some of those customers whether they would give their chrome-plating business to him in the event that he went into that business. After the Whetnall company commenced operations, and while Henness was still an employee of plaintiff, Henness took some of the business of plaintiff's customers to the Whetnall company. In October, 1957, defendant McCormick told certain customers in his territory that he anticipated going into the chrome-plating business, and he asked some of those customers whether they would send business to him in the event he went into that business. On December 17, Henness quit his employment by plaintiff, and thereafter he "took business to Whetnall from almost all of the customers" from whom he had formerly solicited and obtained business for plaintiff.

On January 14, 1958, plaintiff commenced this action against Henness, McCormick, and Whetnall. On the following day plaintiff discharged McCormick. A few days thereafter McCormick commenced soliciting business for Whetnall Plating Company from the customers from whom he had formerly solicited and obtained business for plaintiff.

The court found, among other things, as follows: Certain customers of plaintiff were preferred customers with a much higher volume of business than other customers. Plaintiff had a substantial number of those preferred customers prior to the time plaintiff employed McCormick and Henness. As early as July, 1956, Henness and McCormick planned the formation of a competing business and the transfer of all of plaintiff's customers, serviced by them, to a competing business. They solicited some of plaintiff's employees to join them in that business. In July, 1957, defendants (Henness, McCormick

and Whetnall) conspired and agreed to appropriate from plaintiff, and to transfer to Whetnall Plating Company, the desirable and more lucrative accounts of the persons who were previously solicited by Henness and McCormick. Subsequent to July 1, 1957, Henness and McCormick each, by way of investment, transferred the sum of $5,000 to Whetnall, which money was used by Whetnall in the competing business which thereafter was established in competition with plaintiff. Henness and McCormick, before and after the severance of their relationship with plaintiff, with the intent to injure plaintiff, solicited the business of customers of plaintiff for Whetnall. Before the severance of their relationship with plaintiff, Henness and McCormick called upon the more valuable and preferred customers of plaintiff previously serviced and solicited by said defendants and advised those customers of the contemplated change of employment. After severance of such relationships, said defendants again called upon those customers and advised them that the employment of Henness and McCormick had been changed. Such action of Henness and McCormick was intended to and was understood by those customers to constitute solicitation of the business of the customers and constituted solicitation of their business. Whetnall also solicited the more valuable and preferred customers. The identity of certain of plaintiff's customers called upon by Henness and McCormick did not constitute secret information. The value of the various accounts of customers and knowledge of the amount of business transacted by and between said customers and plaintiff did constitute secret information of plaintiff. Said knowledge constituted a part of plaintiff's good will and was not readily accessible to plaintiff's competitors. For all practical purposes, the sole contact between plaintiff's customers and plaintiff was the daily calls by Henness and McCormick as driver-salesmen. Henness and McCormick had close contacts and friendships with such customers, and said defendants, with the connivance and assistance of Whetnall, used and relied upon such close contacts and friendships in deliberately injuring plaintiff by securing a substantial transfer of business from such customers to Whetnall. There is little competition between electroplaters as to price or quality; the main competition is among salesmen or solicitors by personal contacts and friendships. Chrome-plating business is secured and retained largely by virtue of the friendly contact between the customer and the driver-salesman in the territory. The established business

relationship between plaintiff and its customers ordinarily would have continued unless interfered with. The conduct of defendants constituted such an interference as to deprive plaintiff of such business relationship. Prior to the interference with said relationship, many of plaintiff's customers gave all, or the more substantial part, of their business to plaintiff on a regular basis. From January 1, 1957, to December 17, 1957, plaintiff transacted business in the amount of $124,-358.60 with its customers in the Henness territory. During the first nine and a half months of 1958, plaintiff transacted business in the amount of $9,656.55 with those customers. From January 1, 1957, to December 31, 1958 (1957), plaintiff transacted business in the amount of $111,382.03 with its customers in McCormick's territory. From January 1, 1958, until January 15, 1958 (when McCormick was discharged by plaintiff), plaintiff transacted business in the amount of $1,795.37 in McCormick's territory. During the first eight and a half months of 1958, plaintiff transacted business in the amount of $9,135.39 with customers in McCormick's territory, who in 1957 and 15 days of January, 1958, had transacted business with plaintiff in the amount of $113,177.40. The formation of Whetnall Plating Company, and the attempted transfer of plaintiff's customers thereto by Whetnall and McCormick, were done in accordance with a preconceived plan of Henness, McCormick, and Whetnall with the intention of appropriating plaintiff's customers and of damaging plaintiff's business. On February 1, 1958, Whetnall was doing business with 42 business accounts (customers). Sixteen of those accounts were formerly plaintiff's customers in Henness's territory; eleven were formerly plaintiff's customers in McCormick's territory; nine were formerly plaintiff's customers in plaintiff's Redondo Beach territory; one was formerly plaintiff's customer in plaintiff's Orange County territory. As of the date, February 1, 1958, all of the 42 customers of Whetnall, except five, had been plaintiff's customers prior to the formation of the Whetnall company. Plaintiff has suffered a loss of profits as a result of defendants' appropriation and the transfer of plaintiff's accounts to the Whetnall company. Plaintiff has been damaged by loss of profits in the amount of $61,238.86.

The judgment provided: (1) defendants are permanently enjoined from soliciting any business, either directly or indirectly from any of the former customers listed in the complaint (customers who were "serviced" by Henness and

McCormick, as employees of plaintiff); (2) defendants are permanently enjoined from "accepting any business from any of such customers on said list as shall have prior to the date hereof transferred any portion of their chrome plating business to the defendants, or either of them, as a result of direct or indirect solicitation by any defendant"; and (3) plaintiff is entitled to recover damages from defendants in the amount of $61,238.86.

On motion of defendants for a new trial, the court made an order which provided, in part, as follows: "The motion for a new trial is denied and in lieu of grant*ed* [granting] the motion for a new trial those portions of the findings and judgment involving the subject of monetary damages and no other are set aside and the case is reopened on the sole issue of the amount of damages . . . ." The notice of appeal states that defendants appeal from "the Judgment rendered herein," and from the minute order vacating and setting aside a portion of the findings and a portion of the judgment.

The plaintiff (respondent herein) made motions to dismiss both appeals. The motion to dismiss the appeal from the judgment was denied, and the motion to dismiss the appeal from the minute order was granted. (*Western Electroplating Co.* v. *Henness,* 172 Cal.App.2d 278, 284-285 [341 P.2d 718].)

The briefs state that the appeal (for consideration herein) is from the portion of the judgment granting the injunction.

As above stated, appellants contend that the evidence was insufficient to support the finding on which the injunction was based.

Appellant argues that the evidence is insufficient to bring the present case within the scope of the "delivery route cases" and that the evidence is also insufficient to "meet the five conditions laid down in such cases as *Paraco, Inc.* v. *Owens,* 166 Cal.App.2d 777 [333 P.2d 360]; *Aetna Bldg. Maintenance Co.* v. *West,* 39 Cal.2d 198 [246 P.2d 11]; *California Intelligence Bureau* v. *Cunningham,* 83 Cal.App.2d 197 [188 P.2d 303] . . . that a former employer seeking injunctive relief against an employee must show: (1) The information was confidential and not readily accessible to competitors; (2) The former employee solicited the customers of his former employer with intent to injure him; (3) The former employee sought out certain preferred customers whose trade is particularly profitable and whose identities are not generally known to the trade; (4) The business is such that a customer will ordinarily patronize only one concern; (5) The estab-

lished business relationship between the customer and the former employer would normally continue unless interfered with."

In *Gower* v. *Andrew*, 59 Cal. 119 [43 Am.Rep. 242], it was said, at page 123: "We understand it to be the duty of the employee to devote his entire acts, so far as his acts may affect the business of his employer, to the interests and service of the employer; that he can engage in no business detrimental to the business of the employer; and that he should in no case be permitted to do for his own benefit that which would have the effect of destroying the business to sustain and carry on which his services have been secured."

In *George* v. *Burdusis*, 21 Cal.2d 153 [130 P.2d 399], it was said, at pages 159 and 160: "It is well settled in California that after an employee who worked on a retail delivery route has left the service of his employer, his use of the customer list to solicit business for another person is an unwarranted disclosure of trade secrets. Under such circumstances, a court of equity will enjoin not only the solicitation of the customers of the first employer but also the acceptance of any orders from them. [Citation.] However, where the customers are wholesale buyers whose names appear in directories, and they are so few in number that anyone might readily discover them, it has been held that the employer's list is not secret and confidential information. (*Avocado Sales Co.* v. *Wyse,* 122 Cal.App. 627 [10 P.2d 485]; and see *Gloria Ice Cream & M. Co.* v. *Cowan,* 2 Cal.2d 460, 464 [41 P.2d 340].)

"The rule of *Avocado Sales Co.* v. *Wyse, supra,* has, however, been expressly limited by subsequent decisions of this court. It 'is not merely the knowledge of the identity of the customers, but the friendly contact with them which is important to the solicitors. . . .' Their personal acquaintance with customers and knowledge of 'their respective places of residence, their peculiar likes and fancies and other characteristics, a knowledge of which would greatly aid them in securing and retaining the business of said former customers,' is sufficient to invoke equitable protection against the subsequent use by a former employee of such information. [Citation.]

"And the list of customers, not ordinarily entitled to judicial protection, may become a trade secret, if there is confidential information concerning the value of these customers. Thus in *Scavengers' Protective Association* v. *Serv-U-Garbage Co.* (218 Cal. 568 [24 P.2d 489]), although most of the persons in a particular district were served by the

former employer and consequently the identity of the customers might easily be ascertained by anyone, the defendants had acquired, during the course of their employment for the plaintiff, a knowledge of the salvage value of the refuse of the residents served by them. The use of this information, said the court, to underbid their former employer constituted an improper use of confidential information and amounted to unfair competition. And although the court in *Gloria Ice Cream etc. Co.* v. *Cowan, supra,* assumed that, since the customers on the milk route there in question consisted of restaurants, bakeries, markets, grocery stores and like concerns and were listed in public directories, their names were not trade secrets, yet the deliberate separation of the employee from his employment and use of whatever information he had gained as an agent for the purpose of injuring his former employer's business were unfair tactics which equity would not tolerate."

In the present case, as above stated, there was evidence that: Henness and McCormick were given the exclusive right to solicit business for plaintiff in certain territory and that they were given lists of plaintiff's customers. Henness and McCormick traveled on regular routes and called on the customers once or twice a day. During the time Henness and McCormick were employed by plaintiff, they stated to certain customers that they intended to go into business for themselves, and they asked customers to give their chrome-plating business to them in the event they went into that business. Also, each of those employees, while employed by plaintiff, gave Whetnall $5,000 which was used by Whetnall to establish the Whetnall Plating Company. Henness, while employed by plaintiff, took some of the business of plaintiff's customers to the Whetnall company. (It is to be noted that defendants contended throughout the trial that neither Henness nor McCormick had any interest in the Whetnall company.) After the Whetnall company commenced business, and after Henness and McCormick were not employed by plaintiff, they solicited and obtained, for Whetnall, substantially all the chrome-plating business of customers from whom they had solicited and obtained business while they were employed by plaintiff. Substantially all the business transacted by the Whetnall company was transacted with customers who had been customers of plaintiff, and practically all of those customers were customers from whom Henness and McCormick had previously solicited and obtained business for plaintiff.

The court could reasonably infer from the evidence that

Henness and McCormick were route-salesmen; they had developed a friendly contact with the customers of plaintiff in the territory; they used that friendly contact during and after their employment by plaintiff to transfer substantially all the business of those customers to the Whetnall company; they acquired confidential information regarding the value of the business of the customers in their respective territories, and they used that information, during and after their employment by plaintiff, in the solicitation of business for Whetnall; they used the information they had received as employees of plaintiff for the purpose of transferring the business of plaintiff's customers to the Whetnall company; and Whetnall participated with Henness and McCormick in such actions. The evidence was sufficient to support the findings on which the injunction was granted.

Appellants also contend that the injunction is too broad in scope in that it enjoins them "from accepting business which might be proffered to them."

In *Aetna Bldg. Maintenance Co.* v. *West*, 39 Cal.2d 198 [246 P.2d 11], it was said, at page 204: "Equity will not enjoin a former employee from receiving business from the customers of his former employer, even though the circumstances be such that he should be prohibited from soliciting such business." The injunction is too broad in scope in that it prohibits the defendants from receiving business from the customers (listed in the complaint) which business might be offered to the defendants without any solicitation by the defendants. Other portions of the judgment protect plaintiff from solicitation, by defendants, of business from those customers. The portion of the judgment granting the injunction should be modified by striking therefrom the provision which prohibits the defendants from accepting such unsolicited business.

The portion of the judgment granting the injunction is modified by striking from the next to the last paragraph of the judgment the following words: "on said list as shall have prior to the date hereof transferred any portion of their chrome plating business to the defendants, or either of them." As so modified, the said paragraph should read as follows: "That said defendants, and each of them, are further permanently enjoined and restrained from accepting any business from any of such customers as a result of direct or indirect solicitation by any defendant."

As so modified, the portion of the judgment granting the

injunction is affirmed. Respondent to recover its costs on appeal. Appellants to recover one-sixth of their costs on appeal

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied May 16, 1960, and appellants' petition for a hearing by the Supreme Court was denied June 22, 1960.