[Civ. No. 38768. First Dist., Div. Four. Apr. 15, 1977.]

GOLDEN STATE LINEN SERVICE, INC.,
Plaintiff and Appellant, v.
ROBERT VIDALIN et al., Defendants and Respondents.

2

**COUNSEL**

Birenbaum & Manning and David B. Birenbaum for Plaintiff and Appellant.

Passalacqua & Mazzoni and James R. Mazzoni, Jr., for Defendants and Respondents.

**OPINION**

**RATTIGAN, Acting P. J.**—Appellant Golden State Linen Service (hereinafter Golden State) is a corporation engaged in the linen supply, exchange and delivery business. Respondents Vidalin and Kingsborough left its employ and, with respondents Hodges and Frank, formed respondent Empire Linen Service (Empire) as a similar corporate business. After Empire had directly competed with Golden State in the latter's trade area, Golden State brought the present action against the various respondents (Vidalin and Kingsborough in the first instance, the others by subsequent amendment of the complaint).

The relief sought in the complaint, as amended, included an injunction against the solicitation of Golden State's customers, damages for interference with its contractual relationships with the customers, and (as against Vidalin and Kingsborough) damages for their breach of written employment contracts under which they had worked for Golden State. After a nonjury trial, the court made findings of fact and conclusions of law adverse to Golden State and entered a judgment denying it any relief in the action. Golden State appeals from the judgment.

*Facts*

Viewed in the light most favorable to respondents, the evidence supports the following recitals: At pertinent times, Golden State operated a "depot" in Santa Rosa from which its drivers served customers located in Sonoma County and the counties adjacent to it. Golden State's business depended upon a highly personalized relationship between each of its individual drivers and the customers he served, and his knowledge of their respective needs and preferences.

Respondent Kingsborough went to work for Golden State in 1957. He worked as a driver in the Santa Rosa area, and later as a manager of the "depot" in that city. Respondent Vidalin went to work for Golden State, as a driver, in 1959. When each was first employed, he and Golden State entered into a written "Agreement of Employment." Pertinent provisions of each of the agreements (which were substantially identical) are summarized or quoted in the margin.[1]

---

[1]Although each agreement referred to the employing party by another name, there was evidence showing (and it is undisputed) that the reference identified Golden State for purposes of this action. Each agreement included a recital that Golden State had for several years been conducting "a laundry and towel supply business" in the Counties of Lake, Marin, Mendocino, Napa, and Sonoma. Paragraph IV of the agreement provided as follows (referring to Golden State as "the party of the first part," and to the respective employee as "the party of the second part"; italics, paragraphing and bracketed numerals added):

"IV. It is further understood and agreed by and between the parties hereto, that [1] in carrying out the terms of his employment, the party of the second part, by reason of his intimate association and acquaintanceship with the customers of the party of the first part, is invested to a greater or lesser extent, *with the good-will of the party of the first part,* and it is therefore, understood and agreed between the parties that, for and in consideration for the sum of One Dollar ($1.00) to be paid by the party of the first part to the party of the second part *at the time of the termination of his employment,* whether amicable or otherwise, the party of the second part agrees to sell, assign and set over to the party of the first part all and any right, title or interest he may have or may have acquired in and to *the good-will of said business.*

"[A]nd he further agrees by and with the party of the first part [2] *to refrain from carrying on,* in said territory, or in any territory, of the party of the first part in the

For some years prior to 1971, respondent Frank had been engaged in the linen supply business. During the same period, respondent Hodges had operated a related business in the Santa Rosa area. In 1971, they discussed forming a new business and bringing Vidalin and Kingsborough into it. Hodges testified that an important factor involving Vidalin and Kingsborough was their experience, not the area in which they had acquired it. At the end of February 1972, after meetings among the four men, Vidalin and Kingsborough left the employ of Golden State to join in the new venture. Each was attracted to it by the prospect of sharing in its profits, as part owners, in addition to their earnings as its employees.

Commencing March 1, 1972, the four men organized Empire and began operations in the trade area in which Golden State continued to do business. During the first several months of operation, respondents' solicitation of new customers was primarily conducted by Vidalin and Frank with Kingsborough participating to a lesser extent.

Golden State lost some business, and many of its customers became customers of Empire, during these several months. The present action was commenced by Golden State on November 17, 1972.

Upon the foregoing evidence and other proof to be described, the trial court filed a "Memorandum Of Intended Decision" to the effect that Golden State was to be denied any relief for specified reasons.[2] In its formal findings and conclusions, and consistent with the memorandum, the court determined (1) that respondents had *not* solicited customers of Golden State as the latter had alleged[3] and (2) that paragraph IV of the

counties above named, *a similar business* and [3] that he *will not*, in said territory, *solicit*, divert or take away, directly or indirectly, any of the customers, business or patronage of the party of the first part as long as the party of the first part or any person deriving title to the good will of said business from it shall carry on a like business therein."

[2]We have resorted to the memorandum, as we may do, for the purpose of ascertaining these reasons. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 231, pp. 4221-4222.)

[3]The court found that:

"7. . . . [N]one of the defendants [i.e., respondents] ever personally solicited or petitioned for any business from any of the customers of plaintiff [Golden State] for their own business or the business of any other commercial and industrial laundry.

"8. . . . [N]one of the defendants made any contact whatsoever with any customers of plaintiff unless said defendants were first called or contacted by customers of plaintiff and asked by said customers to take over the business then being serviced by plaintiff.

"9. . . . [N]one of the defendants at any time threatened to solicit and divert any business from customers of plaintiff."

Among its conclusions of law, the court stated "1. That no solicitation of customers of plaintiff by the defendants occurred, because there was no personal petition or importunity addressed by defendants to any of said customers."

employment agreement (quoted in fn. 1, *ante*) was void and unenforce-able.[4]

*Sufficiency Of The Evidence*

On its appeal from the judgment which followed, Golden State contends that respondents *did* solicit its customers, directly or indirectly; and that, irrespective of contract, it is entitled to enforce its legal right to protect its good will and trade secrets. Both points are to be examined in light of the abundant authorities dealing with the "delivery route" situation depicted by the evidence. ■ The authorities establish that a former employer may obtain judicial relief, for a departed employee's use of information obtained during the employment, upon certain conditions. The conditions were stated as follows in *Peerless Oakland Laundry Co.* v. *Hickman* (1962) 205 Cal.App.2d 556 [23 Cal.Rptr. 105]:

" . . . [A]n employer seeking injunctive relief against a former employee must show: (1) the information was confidential and not readily accessible to competitors; (2) the former employee solicited the customers with intent to injure his former employer; (3) the former employee sought out certain preferred customers whose trade is profit-able and whose identities are not generally known to the trade; (4) the business is such that a customer will patronize only one concern; (5) the established business relationship between the customer and former employer would normally continue unless interfered with." (*Peerless Oakland Laundry Co.* v. *Hickman, supra,* 205 Cal.App.2d 556 at p. 560 [citing *Aetna Bldg. Maintenance Co.* v. *West* (1952) 39 Cal.2d 198 (246 P.2d 11) and *Paraco, Inc.* v. *Owens* (1959) 166 Cal.App.2d 777 (333 P.2d 360)]. See also *Diodes, Inc.* v. *Franzen* (1968) 260 Cal.App.2d 244, 255-256 [67 Cal.Rptr. 19]; Annot. (1969) 28 A.L.R.3d 7, 32-36 [California decisions at p. 32], 39-41, 80-82, 136-137, 216-217; Hays, *The California Law of Unfair Competition Takes A Turn—Against The Employer* (1953) 41 Cal.L.Rev. 38, 51, 58-59.)

Appellant correctly cites further authority for the proposition that such information relative to customers (e.g., their identities, locations, and

[1]The court found that "12. . . . [O]n July 28, 1959, defendant, Robert Vidalin, signed a contract with plaintiff [Golden State] and on March 31, 1958, defendant, William Kingsborough, signed a contract with plaintiff, both of which said contracts contained the following language: ' . . . [The Court then quoted the language of the second paragraph of Paragraph IV as reproduced in fn. 1, *ante*] . . . .' "

In its conclusions of law, the court stated "4. That the contracts entered into between plaintiff and defendants, Robert Vidalin and William Kingsborough, are *contracts in restraint of trade* and on this basis are of *no effect whatsoever.*" (Italics added.)

individual preferences), obtained by a former employee in his contacts with them during his employment, may amount to "trade secrets" which will warrant his being enjoined from exploitation or disclosure after leaving the employment. (*Empire Steam Laundry* v. *Lozier* (1913) 165 Cal. 95, 99-102 [130 P. 1180]; *New Method Laundry Co.* v. *MacCann* (1916) 174 Cal. 26, 30-32 [161 P. 990]; *Peerless Oakland Laundry Co.* v. *Hickman, supra,* 205 Cal.App.2d 556 at p. 559.)

It is equally clear, however, that the proscriptions inhibiting the ex-employee reach only his *use* of such information, not to his mere possession or knowledge of it. (*New Method Laundry Co.* v. *MacCann, supra,* 174 Cal. 26 at p. 30 ["utilize"]; *Peerless Oakland Laundry Co.* v. *Hickman, supra,* 205 Cal.App.2d 556 at p. 559.) The term "[s]olicit," as a form of such use or otherwise, is literally defined by its common dictionary meaning. (*Aetna Bldg. Maintenance Co.* v. *West, supra,* 39 Cal.2d 198 at pp. 203-204. See *Leffel* v. *Municipal Court* (1976) 54 Cal.App.3d 569, 575 [126 Cal.Rptr. 773].)

As pertinent to the subject of Empire's "solicitation," so defined, the four individual respondents testified as next indicated. Hodges testified that, before Empire was organized, he and the three men had "a general discussion in leaving customers of the place where you had worked alone for a period of time." Vidalin had avoided Golden State customers in his solicitations on behalf of Empire. He had introduced himself to a Golden State customer on one occasion, but had "bowed out" when he realized the fact. Kingsborough had "stayed away from Golden State accounts" and had never knowingly solicited a Golden State customer. Frank has recognized the "likelihood" (or "possibility") that he and his associates would find themselves soliciting Golden State customers on occasion, "but we were certainly determined to get away from it as quickly as possible."

Respondents called at least eight former Golden State customers, or representatives of customers, who had transferred their accounts to Empire during the period in question. Each of these witnesses testified that the change had been made for various reasons, but *without* any solicitation by Empire or any of the individual respondents.

There was some conflict in the evidence, or conflicting inferences might have been drawn from some of it, as to whether or not respondents had engaged in the "solicitation" negated by the testimony just summarized. ■ In that testimony, however, we find substantial

evidence in support of the trial court's findings 7, 8, and 9; and its conclusion of law No. 1 (quoted in fn. 2, *ante*). Having identified such evidence, we may not disturb the court's essential determinations. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Associated Creditors' Agency* v. *Davis* (1975) 13 Cal.3d 374, 382-383 [118 Cal.Rptr. 772, 530 P.2d 1084].)

### The Covenant In The Employment Contracts

The trial court's finding No. 12 and its conclusion of law No. 4 (quoted in fn. 4, *ante*) reflect its further determination that the provisions of paragraph IV of Vidalin's and Kingsborough's employment contracts with Golden State were void and unenforceable by reason of Business and Professions Code section 16600 and were not within the exception provided in section 16601.[5] Golden State's challenge of this conclusion requires separate analysis of the three passages of the paragraph which we have previously enumerated. (See fn. 1, *ante*.)

■ Part (3) appears to be valid and enforceable insofar as it provides that the affected employee will not solicit Golden State's customers after leaving its employ. (See *Gordon* v. *Landau* (1958) 49 Cal.2d 690, 694 [321 P.2d 456]; *Weissensee* v. *Chronicle Publishing Co.* (1976) 59 Cal.App.3d 723, 728 [129 Cal.Rptr. 188].) As we have concluded above, however, we are bound by the trial court's factual determination that none of the respondents (Vidalin and Kingsborough included) did this.

■ Isolated to its own terms, part (2) appears to be invalid under section 16600 because it would operate to restrain Vidalin and Kingsborough from engaging in a "lawful . . . business." (See § 16600 as quoted in fn. 5, *ante*; *Chamberlain* v. *Augustine* (1916) 172 Cal. 285, 288 [156 P. 479]; *Muggill* v. *Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242 [42 Cal.Rptr. 107, 398 P.2d 147]; *Frame* v. *Merrill Lynch, Pierce, Fenner &*

---

[5]Hereinafter, all statutory references are to the Business and Professions Code except where otherwise expressly indicated. Sections 16600 and 16601 appear in chapter 1 ("Contracts In Restraint Of Trade") of part 2 ("Preservation And Regulation Of Competition") of division 7 ("General Business Regulations"). As pertinent, the two sections provide (italics added):

"16600. *Except as provided in this chapter, every contract* by which *anyone* is restrained from engaging *in a lawful* profession, trade, or *business* of any kind *is to that extent void.*

"16601. Any person *who sells* the *goodwill of a business* . . . may agree with the buyer to refrain from carrying on a similar business within a specified county or counties, city or cities, or a part thereof, in which *the business so sold* . . . has been carried on, so long as the buyer, or any person deriving title to the goodwill . . . from him, carries on a like business therein."

*Smith, Inc.* (1971) 20 Cal.App.3d 668, 672-673 [97 Cal.Rptr. 811]; *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35, 42-43 [100 Cal.Rptr. 791] [affd., 414 U.S. 117 (38 L.Ed.2d 348, 94 S.Ct. 383)].)

Golden State argues to the contrary upon the grounds that, when the two men left its employ, they became vendors of its good will under part (1) of paragraph IV (see fn. 1, *ante*) and that the part (2) covenant not to compete is accordingly valid because it is within the section 16601 exception to section 16600. (See fn. 5.) It is contended that they should not be exempted from the section 16601 exception upon the basis of their mere "status" as ex-employees, as distinguished from the "status" of one who sells the good will of a business when he sells the business itself.

This argument must be rejected for several reasons. ■ Although the forepart of section 16601 appears to validate a covenant not to compete executed by "[a]ny person who sells the goodwill of a business" (see fn. 5, *ante*), a subsequent passage in the statute makes it clear that the term "person" is limited to one who sells the business itself (" . . . the business so sold . . ." [see *ibid.*]).

The express limitation reflects longstanding California authority to the effect that the good will of a business may not be owned by anyone other than the owner of the business. (*Dodge Stationery Co. v. Dodge* (1904) 145 Cal. 380, 387 [78 P. 879]; *Russell v. Russell* (1918) 39 Cal.App. 174, 176-177 [178 P. 307] ["We think the good will of a business is something inseparable from the ownership thereof. The goodwill of a business cannot be conveyed by one party, while the business to which it attaches is owned by another party" (citing *Dodge Stationery Co. v. Dodge, supra*)]; *Haas v. Hodge* (1959) 171 Cal.App.2d 478, 482 [340 P.2d 632] [covenant not to compete held unenforceable as included in a professional-association contract which bore "most of the indicia of an employment agreement"]. See § 14100;[6] *Mahlstedt v. Fugit* (1947) 79 Cal.App.2d 562, 566 [180 P.2d 777].) The limitation is apparently consistent with the weight of authority nationally. (See 38 Am.Jur.2d, Good Will, § 8, p. 916; 38 C.J.S., Good Will, § 3, p. 951.)

The limitation does not appear in section 16601 by accident. The substance of the section was first enacted, as section 1674 of the Civil

---

[6] "14100. The 'good will' *of a business* is the expectation of continued public patronage." (Italics added.)

Code, in 1872.[7] It remained there until it was repealed, reenacted as section 16601, and amended, in 1941. (Stats. 1941, ch. 526, §§ 2 [p. 1847], 1 [p. 1834]; *id.,* ch. 845, § 1, p. 2427.) This was after the courts had twice decided that the good will of a business may not be owned by one who does not own the business. (*Dodge Stationery Co.* v. *Dodge, supra,* 145 Cal. 380 at p. 387; *Russell* v. *Russell, supra,* 39 Cal.App. 174 at pp. 176-177.) Section 16601 was subsequently amended in 1945, when the limiting passage ("the business so sold") appeared in it for the first time. (Stats. 1945, ch. 671, § 1, p. 1341.) It was amended again in 1963 (Stats. 1963, ch. 597, § 1, p. 1476), after the same point had been reiterated by the *Haas* court in 1959. (*Haas* v. *Hodge, supra,* 171 Cal.App.2d 478 at p. 482.)

Given this sequence of events and statutory language, we must presume that the Legislature intended the pertinent term in section 16601 ("[a]ny person who sells the goodwill of a business") to mean and include only a person who owns and sells the business. (See *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 65 [81 Cal.Rptr. 465, 460 P.2d 137]; *Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].) As a matter of legislative intent, therefore, the term may not be construed to include a departing employee for purposes of invoking the section 16601 exception to section 16600.

The validity of the "status" distinction of which Golden State complains, as drawn between an ex-employee and the seller of a business in enforcing a covenant not to compete, has been implicitly recognized in a recent California decision. (*Monogram Industries, Inc.* v. *Sar Industries, Inc.* (1976) 64 Cal.App.3d 692, 697 [134 Cal.Rptr. 714].) The Restatement recognizes it (Rest., Contracts, § 515, cl. (a), com. b and illus. 1), and it has been acknowledged and rationalized in current commentary. (See Comment, *Employee Agreements Not To Compete* (1960) 73 Harv.L.Rev.

---

[7]As enacted in 1872, Civil Code sections 1673 (the predecessor of present § 16600 of the Bus. & Prof. Code) and 1674 read:

"1673. Every contract by which any one is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided by the next two sections, is to that extent void.

"1674. One who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part thereof, so long as the buyer, or any person deriving title to the good will from him, carries on a like business therein." (Civ. Code (1872). Compare the language of present §§ 16600 and 16601 as quoted in fn. 5, *ante.*)

625, 648 [text at fns. 75 and 76]; Pike & Fischer, Customer Contracts, pp. 20,002 and 20,004.)[8]

New York is one jurisdiction whose courts recognize the distinction to the point of adopting "a much stricter attitude" with regard to the postemployment enforcement of an employee's covenant not to compete with his employer. (*Lynch* v. *Bailey* (1949) 275 App.Div. 527 [90 N.Y.S.2d 359, 365-366] [affd. without opn. at 300 N.Y. 615 (90 N.E.2d 484)]; *Purchasing Associates, Inc.* v. *Weitz* (1963) 13 N.Y.2d 267 [246 N.Y.S.2d 600, 196 N.E.2d 245, 247] [here quoted].) However, the New York courts do not treat the distinction as imposing an absolute bar to the enforcement of an employee's covenant; they will enforce it if it is "reasonable." (*Lynch* v. *Bailey, supra,* at p. 365; *Purchasing Associates, Inc.* v. *Weitz, supra*; *Karpinski* v. *Ingrasci* (1971) 28 N.Y.2d 45 [320 N.Y.S.2d 1, 268 N.E.2d 751, 753].)

A significant basis of this policy is under the underlying New York rule that the statute of that state which parallels section 16600 is not an absolute bar to the enforcement of an employee's covenant not to compete with his employer. (*Bradford* v. *New York Times Company* (2d Cir. 1974) 501 F.2d 51, 59 [citing *In re Davies* (1901) 168 N.Y. 89 (61 N.E. 118); *In re Jackson* (1908) 57 Misc. 1 (107 N.Y.S. 799); *Paramount Pad Co.* v. *Baumrind* (1958) 4 N.Y.2d 393 (175 N.Y.S.2d 809, 151 N.E.2d 609)].) The *Bradford* court noted that the California rule was to the contrary because, in contrast, section 16600 "had been interpreted by California courts *as an absolute bar* to *any* employee restraints." (Italics added.) (*Bradford* v. *New York Times Company, supra* [citing *Chamberlain* v. *Augustine, supra,* 172 Cal. 285; *Muggill* v. *Reuben H. Donnelley Corp., supra,* 62 Cal.2d 239].) At least one California court has recognized this distinction between New York and California law. (*Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 20 Cal.App.3d 668 at p. 673.)

The all-inclusive interpretation of section 16600 by the *Muggill* court (*Muggill* v. *Reuben H. Donnelley Corp., supra,* 62 Cal.2d 239 at p. 242) has been cited as declaring that "section 16600 does represent a 'strong

---

[8]The work last cited, which was made available to this court by Golden State's counsel, is a legally oriented trade service published by two organizations with lengthy titles:

It refers to the distinction in these terms: " . . . [B]ecause an employee is more likely to be coerced into an oppressive covenant not to compete than is the seller of a business, the courts are more apt to construe strictly a covenant not to compete contained in an employment contract than in a contract for the sale of a business." (P. 20,002.) " . . . The overall trend of the law is running against covenants that restrict the freedom of the individual *employee.*" (P. 20,004 [italics added].)

public policy' of this state." (*Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 20 Cal.App.3d 668 at p. 673; *Ware* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 24 Cal.App.3d 35 at p. 43. See the decision of the United States Supreme Court affirming *Ware,* 414 U.S. 117 at pp. 123-124, 133 [38 L.Ed.2d 348 at pp. 357-358, 362-363, 94 S.Ct. 383].) We are not persuaded that we should depart from it in the present case.

The judgment is affirmed.

Christian, J., and Emerson, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 9, 1977.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.